[Nos. 3600–II; 4067–II.   Division Two.   September 12, 1980.]

## W. BOOTH GARDNER, *Appellant,* v. PIERCE COUNTY BOARD OF COMMISSIONERS, ET AL, *Respondents.*

*Charlotte N. Chalker,* for appellant.

*Keith M. Black* and *Frederick B. Hayes,* for respondent.

PEARSON, A.C.J.—Booth Gardner appeals from a Superior Court judgment affirming the Pierce County Board of Commissioners' approval of a preliminary plat of an area adjacent to his home. The Superior Court determined, among other things, that there was insufficient evidence to establish that the preliminary plat violates a state regulation, WAC 248–96–090. We hold that such a violation was established and the County's negative declaration of environmental significance was consequently clearly erroneous. Hence we reverse.

Wingedfoot Estates, the preliminary plat at issue here, consists of 29.2 undeveloped acres located in the Parkland–Spanaway area, east of McChord Air Force Base and abutting land owned by Mr. Gardner. On March 9, 1978, the Pierce County Planning Commission denied the plan for the preliminary plat for failure to comply with the proposed comprehensive land plan being developed for the area by a citizens' advisory committee. The comprehensive plan called for 2 1/2 acres per living unit, while the preliminary plat provided for less than 1 acre per living unit.

The developer appealed the decision of the planning commission to the Pierce County Commissioners, who held a hearing on April 17, 1978, and voted to delay a decision until May 8, 1978. An interim committee was appointed to make recommendations concerning the feasibility of interim zoning until the comprehensive land plan could be formally adopted.

At the hearing on May 8, the Commissioners voted 2 to 1 to approve the plat prior to hearing any public testimony, owing to a mistaken belief that a full hearing had been conducted the week before. The mistake was pointed out, the vote was withdrawn, and the public hearing was then held. The Commissioners subsequently voted again 2 to 1 to approve the plat.

Mr. Gardner appealed the Commissioners' action to the Superior Court, which heard argument on July 10, 1978, and found on July 14, 1978, that the action of the Commissioners was not unlawful, arbitrary, or capricious in that the

negative declaration was based on substantial evidence, that there was insufficient evidence to show the state regulation had been violated, and that the appearance of fairness doctrine had not been violated.

The trial court decision was appealed and on April 6, 1979, petitioner moved for reconsideration of newly discovered evidence which assertedly would have substantiated his position that the state regulation was violated. The trial court denied petitioner's motion on April 27, 1979, which denial is also being appealed.

The first issue on appeal is whether this court is precluded from reviewing the County's declaration of negative environmental impact on the basis that petitioner failed to exhaust his administrative remedies under a Pierce County ordinance.

Ordinance No. 66.02.130 provides:

> Any aggrieved person may appeal the threshold determination or any other decision of the County Environmental Official by filing notice of appeal with the County Environmental Official and paying the $75.00 appeal fee within the following time period:
>
> . . .
> . . . *but if notice is not provided,* then said appeal may be filed any time up to ten (10) days before the county final granting authority is scheduled to commence a hearing or meeting concerning the approval of said proposal.

(Italics ours.) Defendants concede that the County did not give notice of the negative declaration when it was issued on February 14, 1978, and there is nothing in the record before this court to indicate that petitioner had notice of the declaration or an opportunity to challenge it until the May 8 Commissioners' hearing, at which time it apparently became a part of the record. To require petitioner to file an appeal 10 days before the hearing under these circumstances would be unreasonable and violative of due process. *See Prosser v. Butz,* 389 F. Supp. 1002 (N.D. Iowa 1974). Where one has not enjoyed a fair opportunity to exhaust

the administrative process, or where resort to administrative procedures would be futile, exhaustion of administrative remedies will not be required. *Craycroft v. Ferrall,* 408 F.2d 587 (9th Cir. 1969) *(vacated on other grounds,* 397 U.S. 335, 25 L. Ed. 2d 351, 90 S. Ct. 1152 (1970)); *Zylstra v. Piva,* 85 Wn.2d 743, 539 P.2d 823 (1975). It is also interesting to note that defendants, Pierce County Commissioners, abandoned this argument in their brief; the argument is made instead by defendants' developer, Milton. We hold that there was no failure by petitioner to exhaust administrative remedies and our review is not precluded.

The second, and pivotal, issue on appeal is whether the Pierce County Commissioners' negative declaration of environmental significance was clearly erroneous. The soil in the platted area at issue is classified as type 1, permitting rapid drainage and percolation which exceeds 1 minute per inch. WAC 248–96–090 sets forth minimum lot sizes for subdivisions, depending on the soil type. It provides that one of three methods shall be used for determining lot sizes when on–site sewage disposal (septic tanks) is used, as in the present case. Briefly, it required (1) 2 acres per lot for individual, nonpublic use on type 1 soil, or (2) minimum lot sizes to be established by the local health officer "[i]f engineering justification can be provided that a lot or lots have a sufficient amount of area with proper soils to adequately retain and treat sewage on–site". Factors that must be considered when determining minimum lot size under WAC 248–96–090 Method (2) include soil type, drainage, protection of groundwaters, and the source of domestic waters. In this case individual wells are the source of domestic waters for Mr. Gardner and surrounding landowners.

■ The foregoing requirements are mandatory unless the local health department has submitted conforming local regulations to the Secretary of the Department of Social and Health Services and has received specific approval by the Secretary. WAC 248–96–015 and –016. There is no evidence in the record that Pierce County was exempted by

virtue of this procedure from any requirements of WAC 248–96–090. Defendants argue that this issue should not be considered on appeal on the basis that petitioner failed to clearly challenge the negative declaration at the hearing before the Commissioners, and now seeks to "ambush" them. We disagree. Without specifically referring to WAC 248–96–090, petitioner did argue before the Commissioner that:

This type soil is classified as Number 1. This permits a very excessive drainage, with a percolation rate of less than one minute per inch. The Department recommends that the maximum density for this soil classification should not exceed one unit per acre if a public water supply is available, or one unit per two acres if the individual lots are on private water supply.

Thus the County's failure to present evidence establishing "engineering justification" on the record cannot be attributed to ambush tactics by petitioner. Whether or not property owners in petitioner's position specifically raise a SEPA challenge, the record of a government agency's negative threshold determination must demonstrate that environmental factors were considered in a manner sufficient to amount to a prima facie compliance with the procedural requirements of SEPA. State Environmental Policy Act of 1971, RCW 43.21C. *Sisley v. San Juan County,* 89 Wn.2d 78, 569 P.2d 712 (1977); *Juanita Bay Valley Community Ass'n v. Kirkland,* 9 Wn. App. 59, 510 P.2d 1140 (1973). The SEPA policies of full disclosure and consideration of environmental values require actual consideration of environmental factors *before* a determination of no environmental significance can be made. *Norway Hill Preservation & Protection Ass'n v. King County Council,* 87 Wn.2d 267, 552 P.2d 674 (1976).

Thus we hold the County had an affirmative duty to demonstrate its justification for a negative declaration under SEPA. In this case, the record contains no showing of whether or not the proposed plat violates WAC 248–96–090. It is clear that the proposed lot size is well under 2

acres per lot. It is not clear, however, whether any engineering justification can be made for approval of smaller lots. Without a clear record on this point, the County has failed to demonstrate a justification for its negative declarations under SEPA. The lack of a record renders the County's determination clearly erroneous. *See Norway Hill Preservation & Protection Ass'n v. King County Council, supra.*

■ Defendants seem to argue that the preliminary plat is an insignificant stage of the proceedings, not warranting the kind of scrutiny prescribed above. Such an argument is vitiated by *Loveless v. Yantis*, 82 Wn.2d 754, 759–61, 513 P.2d 1023 (1973).

> Our ruling regarding the nature of a preliminary plat establishes that it is not merely an insignificant stage of the proceedings without real consequence. The failure to litigate environmental and zoning issues at this stage could result in decisions being reached by the county that have a binding impact on intervenors without their consent or participation.
>
> . . .
>
> . . . since any approval or modification by the reviewers of a preliminary plat is binding where infirmities appear that would preclude any possible approval (such as clear zoning violations), it is incumbent upon the planning body to reject the plat.

Petitioner asserts that approval of the plat was arbitrary and capricious, and that the Commissioners' vote prior to hearing any testimony destroyed the appearance of fairness, although the vote was withdrawn and retaken following a full hearing. In view of our reversal of the plat approval as clearly erroneous, we find it unnecessary to address petitioner's alternative arguments. It is also unnecessary for us to address the propriety of the trial court's refusal to reconsider its decision on the basis of newly discovered evidence. That evidence can be presented should defendants seek approval of the plat in the future.

The County's action in approving the preliminary plat is reversed.

PETRIE and PETRICH, JJ., concur.

Reconsideration denied October 17, 1980.