[No. 5464–7–II.   Division Two.   October 22, 1982.]

SOUTH HOLLYWOOD HILLS CITIZENS ASSOCIATION FOR
THE PRESERVATION OF NEIGHBORHOOD SAFETY
AND THE ENVIRONMENT, *Appellant,* v.
KING COUNTY, ET AL,
*Respondents.*

*James Thomas,* for appellant.

*Norm Maleng, Prosecuting Attorney, Stephen O. Kenyon, Deputy,* and *Joel Haggard,* for respondents.

REED, C.J.—The South Hollywood Hills Citizens Association for the Preservation of Neighborhood Safety and the Environment (Association) petitioned superior court for a writ of review following the King County Council's approval of the second of two preliminary plats which the Association opposed. It now seeks reversal of an order dismissing its petition. The petition was dismissed because of (1) fail-

ure to exhaust administrative remedies; (2) failure to join an indispensable party; (3) failure to file within 30 days; and (4) failure to state a claim for which relief could be granted under the writ of certiorari statute, RCW 7.16. We affirm in part and reverse in part.

The two subdivisions are located at the northwest corner of N.E. 132nd Street and 168th Avenue N.E. in an unincorporated suburban area of northern King County. Members of the Association live nearby on 164th Avenue N.E. Initially, one subdivision dividing 40 acres into 41 lots was proposed. The project was later split in two and designated Bristol View One and Bristol View Two.

On October 15, 1979, the King County Council granted preliminary plat approval for Bristol View One. This decision was not challenged until September 11, 1980, nearly 10 months after the 30–day appeal period had elapsed. RCW 58.17.180 and former King County Code 20.24.210 (now codified as 20.24.240).[1] Nevertheless, the Association maintains that its claims are unaffected by the 30–day appeal period because notice concerning the subdivision was inadequate.

Notice of a public hearing concerning Bristol View One was published in The Daily Journal–American on April 12,

---

[1]RCW 58.17.180 states:

"Review of decision. Any decision approving or disapproving any plat shall be reviewable for unlawful, arbitrary, capricious or corrupt action or nonaction by writ of review before the superior court of the county in which such matter is pending. The action may be brought by any property owner in the city, town or county having jurisdiction, who deems himself aggrieved thereby: *Provided,* That application for a writ of review shall be made to the court within thirty days from any decision so to be reviewed. The cost of transcription of all records ordered certified by the court for such review shall be borne by the appellant."

King County Code 20.24.210 stated:

"Review of final decisions. A. Decisions of the council in cases identified in Section 20.24.070 shall be final and conclusive action unless within . . . thirty calendar days for decisions approving or denying plats, from the date of the council's adoption of an ordinance an aggrieved person applies for a writ of certiorari from the Superior Court in and for the county of King, state of Washington, for the purpose of review of the action taken; provided, no development or related action may occur during said . . . thirty–day for plat approvals, appeal period."

1978. On April 21, approximately 2 weeks prior to the public hearing, notice was posted at three locations near the property. Although these procedures comply with RCW 58.17.090,[2] the Association contends they were inadequate; the Association argues that *actual* notice was necessary. We disagree.

■■ Due process requires only that notice be reasonably calculated under the circumstances to inform a party of the pendency of proceedings affecting him or his property. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652 (1949); *Barrie v. Kitsap Cy.,* 84 Wn.2d 579, 527 P.2d 1377 (1974); *Rosholt v. Snohomish Cy.,* 19 Wn. App. 300, 575 P.2d 726 (1978). Because the statutory notice requirements have been satisfied, the Association's attack is, in essence, an attack on the constitutionality of that statute. The Association bears the burden of proving beyond a reasonable doubt that RCW 58.17.090 is unconstitutional. *See Sator v. Department of Rev.,* 89 Wn.2d 338, 572 P.2d 1094 (1977). It has not met that burden. The Association has offered no proof that a

---

[2]RCW 58.17.090 provides:

"Notice of public hearing. Upon receipt of an application for preliminary plat approval the administrative officer charged by ordinance with responsibility for administration of regulations pertaining to platting and subdivisions shall set a date for a public hearing. At a minimum, notice of the hearing shall be given in the following manner: (1) Notice shall be published not less than ten days prior to the hearing in a newspaper of general circulation within the county and a newspaper of general circulation in the area where the real property which is proposed to be subdivided is located; (2) special notice of the hearing shall be given to adjacent landowners by any other reasonable method local authorities deem necessary. Adjacent landowners are the owners of real property, as shown by the records of the county assessor, located within three hundred feet of any portion of the boundary of the proposed subdivision. If the owner of the real property which is proposed to be subdivided owns another parcel or parcels of real property which lie adjacent to the real property proposed to be subdivided, notice under this subsection shall be given to owners of real property located within three hundred feet of any portion of the boundaries of such adjacently located parcels of real property owned by the owner of the real property proposed to be subdivided. All hearings shall be public. All hearing notices shall include a description of the location of the proposed subdivision. The description may be in the form of either a vicinity location sketch or a written description other than a legal description."

combination of publication and posting is unreasonable.

The Association attacks the content of the notice as well as the adequacy of publication. Specifically, it maintains that the notice did not mention that 164th Avenue N.E. would be affected by the subdivision. Here, the notice identified the property involved and the purpose of the hearing. It correctly stated the time and place of hearing and where additional details could be obtained. This notice would have enabled any interested person to ascertain whether his or her property might be affected. This satisfies the due process requirements noted above. The Association cites no authority, nor have we found any, that would require additional information be given.

■ Finally, the Association contends that its State Environmental Policy Act of 1971 (SEPA) cause of action is unaffected by the 30–day appeal period (RCW 58.17.180) because no notice was published pursuant to RCW 43.21C-.080 to trigger the SEPA statute of limitations. The fallacy of this argument is revealed by examining the procedure used to bring SEPA claims to superior court. SEPA creates no express mechanism for appeal; rather, it overlays and supplements existing authority. *See, e.g., Department of Natural Resources v. Thurston Cy.*, 92 Wn.2d 656, 601 P.2d 494 (1979); *Polygon Corp. v. Seattle*, 90 Wn.2d 59, 578 P.2d 1309 (1978); RCW 43.21C.060. Thus, SEPA claims are brought within the confines of whatever statutory framework is provided for challenging the particular government action in question. *Cf. Asarco Inc. v. Air Quality Coalition*, 92 Wn.2d 685, 601 P.2d 501 (1979) (SEPA claims concerning the granting of a variance were brought pursuant to RCW 43.21B.110); *State v. Brannan*, 85 Wn.2d 64, 530 P.2d 322 (1975) (SEPA claims concerning the routing of a proposed highway were brought pursuant to RCW 47.52-.195). Here, RCW 58.17.180 and King County Code 20.24-.210 provide specific mechanisms for review of the King County Council's preliminary plat decisions. Consequently, we hold that these enactments control the time within which all claims, including SEPA causes of action, must be

brought. The Association brought its SEPA claim nearly 10 months after the appeal period had expired. The trial court correctly determined that the Association's appeal with respect to Bristol View One was untimely.

■■ We now shift our attention to the causes of action relating to Bristol View Two. These were dismissed primarily for failure to exhaust administrative remedies and failure to join an indispensable party. The exhaustion rule requires the affected individual to take advantage of all remedies within the administrative process before seeking judicial relief. *State v. Tacoma–Pierce Cy. Multiple Listing Serv.*, 95 Wn.2d 280, 622 P.2d 1190 (1980); *Wright v. Woodard,* 83 Wn.2d 378, 518 P.2d 718 (1974). The rule is intended to (1) insure that a factual record is made; (2) protect the integrity of the administrative process; (3) insure that issues receive the benefit of agency expertise; and (4) conserve judicial resources. *Aleknagik Natives Ltd. v. Andrus,* 684 F.2d 496 (9th Cir. 1980).

To determine whether the Association exhausted administrative remedies, we must examine the administrative framework King County has erected for processing preliminary plat applications. The County has adopted the "hearing examiner system" sanctioned by RCW 58.17.330. In doing so it has elected to limit the legal effect of the examiner's decisions to a mere *recommendation* to the council, as opposed to a final decision. King County Code 20.24.070. Under the ordinance, recommendations may be appealed to the council, provided an appeal is filed within 14 days following the examiner's decision. The question here is whether failure to appeal from the examiner's decision precludes judicial review. We hold that it does not.

At the core of the exhaustion doctrine is the principle that the courts should not interfere with the administrative process until the final administrative decision maker has acted. Here the final decision rests with the King County Council. Former King County Code 20.24.200 (now codified as 20.24.230). Under its own ordinances, either with or without an appeal, the council must consider the merits of

the plat application and is free to adopt, reverse, or remand the recommendation of the examiner. According to the County's brief, reversal or modification is not uncommon. We recognize that, as a practical matter, the council may not review the examiner's recommendation as rigorously as when an appeal is taken. The fact remains that the council must be presumed to have exercised its considered judgment in taking final action. Certainly, an appeal from the examiner's recommendation is the preferred procedure for an aggrieved party to follow. It is not, however, mandatory. Because the council retains the responsibility for making a final decision on the merits, it may not step behind the cloak of the exhaustion doctrine to insulate itself from the appeal provided by RCW 58.17.180.

There is a paucity of authority on this exact question, but we find it directly addressed in the well considered case of *Ace Delivery Serv., Inc. v. Boyd*, 100 So. 2d 417 (Fla. 1958). There, the Florida Supreme Court considered a motion to dismiss a writ of certiorari which was grounded on the fact petitioners had failed to file exceptions to the report of a special examiner (Examiner). The Examiner was empowered by the Public Utilities Commission (Commission) to conduct hearings and recommend whether the Commission should grant or deny a private contract certificate of public convenience and necessity. A Commission rule gave the affected party 15 days to file exceptions to the Examiner's proposed order. As in the King County scheme, however, that rule did not confine the Commission to a consideration of exceptions to the Examiner's proposed order when the Commission entered its final order. The court likened the Examiner's recommendation to a report by a special master to the court, stating:

> We have held that in such cases even in the absence of exceptions, the responsibility of the Judge is to examine the evidence and determine whether under the law and facts the Court is justified in entering the decree recommended by the master.

*Ace Delivery Serv., Inc. v. Boyd*, 100 So. 2d at 419. The

court then concluded:

> We might add also that it is our view that it would facilitate disposition of causes and promote the expeditious handling of matters before the respondent Commission if aggrieved parties would follow the practice of filing exceptions to the reports of Examiners . . . However, we do not consider that these are essential prerequisites to the assertion of the right to obtain judicial review of the final order of the Commission.

*Ace Delivery Serv., Inc. v. Boyd, supra* at 419–20. We adopt the rationale of *Ace* and hold that the Association's failure to appeal from the examiner's "recommendation" does not preclude judicial review of the council's final action approving the preliminary plat of Bristol View Two.

We turn now to the trial court's ruling that the Association failed to join an indispensable party. Some background is necessary to bring the issue into focus. The Association filed its lawsuit without naming the project applicant, Burnstead Construction Company. To correct this oversight the Association filed an amended petition and effected service of process—all within the 30–day appeal period. Shortly after the 30–day period expired, the Association was informed that David and Linda Mowat had recently contracted to purchase from Burnstead Construction Company. That same day the Association filed a second amended application for writ of review and served the Mowats. The issue then is whether the second amended petition, filed 4 days after the expiration of the 30–day appeal period, relates back to the date of the original petition.

Resolution of this issue turns on the proper construction of CR 15(c).[3] In *North St. Ass'n v. Olympia,* 96

---

[3]CR 15(c) provides:

"**Relation Back of Amendments.** Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him,

Wn.2d 359, 635 P.2d 721 (1981), our Supreme Court held that a plaintiff may take advantage of the provisions of CR 15(c) which permit relations back provided the plaintiff's delay was not due to inexcusable neglect. The court cited as an important factor whether the plaintiff knew of the necessary party at the time the original complaint was filed. Here, the Association was unaware that the Mowats had acquired an interest in the property. Moreover, the Mowats received a letter from Burnstead Construction Company informing them of the lawsuit prior to the expiration of the 30–day appeal period. Consequently, the Mowats "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against [them]." CR 15(c)(2). Thus, joinder was proper.

Next, the trial court ruled that the Association failed to state a claim for which relief could be granted under the certiorari statute, RCW 7.16. Unfortunately, the trial court did not elaborate, nor did the County or the Mowats in their briefs. We note that the Association sought relief under RCW 58.17.180 which provides for review as a matter of right. *North St. Ass'n v. Olympia, supra.* It appears from our review of the Association's petition that an arguable SEPA issue was framed.

Accordingly, we affirm the trial court's dismissal of the petition as it relates to Bristol View One. The issues relating to Bristol View Two are remanded to superior court for proceedings consistent with this opinion.

PETRICH and WORSWICK, JJ., concur.

Reconsideration denied December 1, 1982.

Review granted by Supreme Court January 21, 1983.

---

the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him."