[No. 49250-6. En Banc. February 2, 1984.]

SOUTH HOLLYWOOD HILLS CITIZENS ASSOCIATION FOR
THE PRESERVATION OF NEIGHBORHOOD SAFETY
AND THE ENVIRONMENT, *Respondent,* v.
KING COUNTY, ET AL,
*Petitioners.*

---

DIMMICK, J., concurs by separate opinion; DORE and PEARSON, JJ., dissent by separate opinion.

*Norm Maleng, Prosecuting Attorney, Stephen O. Kenyon, Deputy, Haggard, Tousley & Brain, Joel Haggard,* and *Timothy T. Black,* for petitioners.

*Diamond & Sylvester,* by *James M. Thomas,* for respondent.

ROSELLINI, J.—Respondent, South Hollywood Hills Citizens Association for the Preservation of Neighborhood Safety and the Environment (Association), sought a writ of review challenging the King County Council's approval of a plat. The trial court ruled that the Association had failed to exhaust administrative remedies and had untimely joined indispensable parties. It dismissed the writ, the Court of Appeals reversed and we granted review. The decision of the Court of Appeals is reversed. *South Hollywood Hills Citizens Ass'n v. King Cy.,* 33 Wn. App. 169, 653 P.2d 1324 (1982).

I

This dispute arises from the following facts:

The Association is composed of individual families who reside in an unincorporated area of King County between Redmond and Woodinville. The Association was formed after the individuals learned that a subdivision (Bristol View) of about 40 homes was planned for the neighborhood. The instant case arises from the Association's attempts to stop the Bristol View development. Burnstead Construction Company (Burnstead), the original owner of the property in question, first filed the preliminary plat in early 1978. The April 12, 1978, edition of The Daily Journal–American contained notice of the public hearing to consider the proposal. That hearing was held on May 4, 1978. In addition, 2 weeks before the hearing, three notices were posted on the property itself.

Burnstead then filed the necessary documents. The King County Department of Public Health, expressing concern over the development's sewage system, asked for a revised

preliminary plat. The hearing was continued until August 27, 1979, to allow for the preparation of the new proposal. At the continued hearing, Burnstead submitted a revised plat which provided that the development would take place in two parts denominated Bristol View One and Two.

After the public hearing in August 1979 (at which no one testified), the hearing examiner forwarded his recommendation to the King County Council. The recommendation approved the plat proposal for Bristol View One. No appeal was taken from this ruling. The King County Council granted preliminary conditional approval of the plat on October 15, 1979.

In May 1980, Burnstead submitted the plat for Bristol View Two. An additional public hearing was scheduled for July 17, 1980. Notice of this hearing was published on June 25 in the Northshore Citizen. Although the Association was not in existence at the time of this hearing, several individuals who later became members were present and given the opportunity to express their views regarding the subdivision. These individuals, including the Association's attorney, were sent, by certified mail, copies of the hearing examiner's recommendation in favor of the development. Along with the recommendation, these individuals received the following notice:

NOTICE OF RIGHT TO APPEAL

Pursuant to Chapter 20.24.190 of the King County Code, notice of appeal must be filed in writing on or before August 27, 1980. If a notice of appeal is filed, the original and 15 copies of a written appeal statement specifying the basis for the appeal and arguments in support of the appeal must be filed with the Clerk of the King County Council on or before September 3, 1980. If no written appeal statements or arguments are filed within 21 calendar days of the date of this Report and Recommendation, the Clerk of the Council shall place a proposed ordinance which implements the Examiner's recommended action on the agenda of the next available Council meeting.

*Notice that King County Council Ordinance No. 4461 has made the timely filing of written appeal arguments*

*a jurisdictional requirement for consideration of an appeal by the Council.*

Pursuant to Chapter 20.24.210 of the King County Code: "*Action of the Council Final.* The action of the Council approving or rejecting a decision of the Examiner shall be final and conclusive unless within twenty (20) days from the date of the action, an aggrieved party or person obtains a writ of certiorari from the Superior Court in and for the County of King, State of Washington, for the purpose of review of the action taken."

Clerk's Papers, at 121. No appeal was filed and on September 2, 1980, the King County Council granted preliminary approval of Bristol Two.

On September 11, 1980, the Association applied for a writ of review. The original pleadings failed to name the project applicant, Burnstead, and the action was dismissed. Respondent corrected this oversight by filing an amended application for writ of review, naming Burnstead but not the property owners, David and Linda Mowat. After the 30–day appeal period had expired, the Association's attorney learned that the property had been sold to the Mowats in July 1980. The Mowats' real estate contract had been properly filed prior to the time the Association filed its original pleadings but counsel apparently did not attempt to ascertain ownership of the property in question. Counsel then filed an amended complaint naming the Mowats and sought to have it relate back to the date of the original pleading.

The trial judge dismissed the Association's action, holding (1) that the Association had failed to exhaust its administrative remedies by not appealing the hearing examiner's recommendation and (2) that the failure to join the Mowats, who are admittedly indispensable parties by virtue of their ownership of the property, was inexcusable neglect which prevented the relationship back of the amendment.

The Court of Appeals reversed the trial court as to the Bristol Two development, holding that the Association did not need to exhaust the administrative remedies because

the hearing examiner's recommendation was not final. The court also ruled that the failure to name the Mowats prior to the expiration of the appeal period was not inexcusable neglect. We granted King County's petition for review. We hold the Court of Appeals erred on both issues and reverse.

## II

■ The doctrine of exhaustion of administrative remedies is well established in Washington. The rule provides that "[i]n general an agency action cannot be challenged on review until all rights of administrative appeal have been exhausted." *Spokane Cy. Fire Protec. Dist. 9 v. Spokane Cy. Boundary Review Bd.*, 97 Wn.2d 922, 928, 652 P.2d 1356 (1982). The test for imposition of the doctrine was spelled out recently in *State v. Tacoma–Pierce Cy. Multiple Listing Serv.*, 95 Wn.2d 280, 622 P.2d 1190 (1980). There, the court said:

> [A]dministrative remedies must be exhausted before the courts will intervene: (1) "when a claim is cognizable in the first instance by an agency alone"; (2) when the agency's authority "'establishes clearly defined machinery for the submission, evaluation and resolution of complaints by aggrieved parties"; and (3) when the "relief sought . . . can be obtained by resort to an exclusive or adequate administrative remedy".

95 Wn.2d at 284 (quoting from *Retail Store Employees Local 1001 v. Washington Surveying & Rating Bur.*, 87 Wn.2d 887, 906–07, 909, 558 P.2d 215 (1976)).

The principle is founded upon the belief that the judiciary should give proper deference to that body possessing expertise in areas outside the conventional experience of judges. *Retail Employees*, at 906. The underlying policy which supports the doctrine was discussed in *McKart v. United States*, 395 U.S. 185, 23 L. Ed. 2d 194, 89 S. Ct. 1657 (1969). There, the Court observed that the doctrine (1) insured against premature interruption of the administrative process; (2) allowed the agency to develop the necessary factual background on which to base a decision; (3) allowed exercise of agency expertise in its area; (4) provided

a more efficient process; and (5) protected the administrative agency's autonomy by allowing it to correct its own errors and insuring that individuals were not encouraged to ignore its procedures by resorting to the courts.

Washington courts have recognized exceptions to the exhaustion requirement in circumstances in which these policies are outweighed by consideration of fairness or practicality. For example, if resort to the administrative procedures would be futile, exhaustion is not required. *Zylstra v. Piva,* 85 Wn.2d 743, 539 P.2d 823 (1975). Similarly, if the party is challenging the constitutionality of the agency's action or of the agency itself, the exhaustion requirement will be waived. *Ackerley Communications, Inc. v. Seattle,* 92 Wn.2d 905, 602 P.2d 1177 (1979), *cert. denied,* 449 U.S. 804 (1980); *Higgins v. Salewsky,* 17 Wn. App. 207, 562 P.2d 655 (1977). Also, if the aggrieved party has no notice of the initial administrative decision or no opportunity to exercise the administrative review procedures, the failure to exhaust those procedures will be excused. *Gardner v. Pierce Cy. Bd. of Comm'rs,* 27 Wn. App. 241, 243–44, 617 P.2d 743 (1980).

■ Respondent urges that it should not be barred from seeking judicial review because it did not receive adequate notice of the hearings. Since the Association was not in existence at the time, the adequacy of the notice given in this case must be examined in light of the notice given to the Association's members. We find that the notice was sufficient and reject this argument.

■ Respondent's notice argument rests on the assertion that the notice provisions of RCW 58.17.090 are constitutionally inadequate. We disagree. First, respondent mistakes the notice required in such situations. As the Court of Appeals observed, "[d]ue process requires only that notice be reasonably calculated under the circumstances to inform a party of the pendency of proceedings affecting him or his property." *South Hollywood Hills Citizens Ass'n v. King Cy.,* 33 Wn. App. 169, 172, 653 P.2d 1324 (1982); *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 94 L.

Ed. 865, 70 S. Ct. 652 (1949). The circumstances involved in a plat approval make personal notice to all property owners who may potentially be affected by the council's action impractical. Thus, RCW 58.17.090's provision that notice may be given by publication in a local newspaper is reasonable under the circumstances. RCW 58.17.090 does provide additional protection to those directly affected by a plat. Thus, measures to provide notice to *adjacent* property owners are to be developed by the local authorities. Here, although members of the Association do not appear to qualify as *adjacent* property owners, additional notice procedures were provided for by King County ordinance 4460. This ordinance requires publication plus posting of notices on the property itself. King County Code 19.36.050. The notice procedures outlined above were implicitly approved in *Seattle Shorelines Coalition v. Justen,* 93 Wn.2d 390, 398, 609 P.2d 1371 (1980). The record clearly indicates these procedures were followed. In addition, at least two individuals who are members of the Association plus its attorney attended and participated in the public hearing conducted in July 1980. We can therefore infer that notice procedures were effective.

A second argument for rejecting respondent's allegation that inadequate notice excuses the failure to exhaust administrative remedies is the fact that those individuals who participated at the public hearing were sent actual notice of the hearing examiner's decision. This notice specifically informed those individuals of the need to appeal the hearing examiner's recommendations. Respondent has not explained why those who received actual notice of the decision (including respondent's counsel) did not appeal. Under these circumstances, the Court of Appeals properly rejected respondent's allegation that notice was inadequate.

On the other hand, the Court of Appeals did excuse respondent's failure to exhaust administrative remedies. The Court of Appeals, following *Ace Delivery Serv., Inc. v. Boyd,* 100 So. 2d 417 (Fla. 1958), created an exception to the exhaustion of remedies doctrine for those agency deci-

sions which are merely recommendations rather than final decisions.

The regulatory scheme discussed in *Ace Delivery,* however, differs significantly from that used by King County. The system there under consideration did not make the filing of an appeal jurisdictional. Here, the parties were specifically informed of this requirement. Thus, the Court of Appeals reliance on this case was misplaced. In addition, we find the reasoning of *Ace Delivery* unpersuasive and therefore decline to adopt an exception for administrative recommendations, when the individuals are informed of the need to appeal that recommendation.

 To begin with, this exception conflicts with the basic policy rationale for the rule. As noted above, the rule exists to insure, *inter alia,* that an adequate factual record is created, and that the agency's autonomy is protected. Here, allowing the exception created by the Court of Appeals thwarts these goals. Had any of the individuals who attended the public hearing appealed the hearing examiner's recommendation, the King County Council could have acted accordingly, either by holding hearings itself or remanding to the hearing examiner for further hearings. Without the benefit of an appeal of that decision, the Council was entitled to assume that objections to the proposal had subsided. Furthermore, the exception suggested by the Court of Appeals discourages citizen participation in the administrative process in favor of judicial adjudication of the issue. The courts are an inappropriate forum for these disputes. Thus, we hold that respondent's failure to appeal the decision of the hearing examiner precludes judicial review of the King County Council's decision.[1]

---

[1]RCW 58.17.180's provision allowing judicial review does not alter this conclusion. Although a party has the right to judicial review, that right may be forfeited or waived by not following the proper procedures such as exhausting administrative remedies. *See Spokane Cy. Fire Protec. Dist. 9 v. Spokane Cy. Boundary Review Bd.,* 97 Wn.2d 922, 652 P.2d 1356 (1982).

## III

As there is no question that the property owners in a plat dispute are indispensable parties, the sole issue here is whether the amended pleadings should relate back to the date the original pleadings were filed. We find that the delay was caused by inexcusable neglect, and reverse on this issue as well.

The issue of when an amended pleading should relate back was most recently discussed in *North St. Ass'n v. Olympia,* 96 Wn.2d 359, 635 P.2d 721 (1981). *North Street* adopts a test similar to that required in federal courts. That test combines the requirements of CR 15(c) with an evaluation of whether the failure to join the proper parties was due to inexcusable neglect. Thus, the court must determine first whether the requirements of CR 15(c) have been met. That rule provides:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

After discussing this rule, the court in *North Street* observed: "The amended rule, however, still does not permit joinder if the plaintiff's delay is due to inexcusable neglect." *North Street,* at 368. Here, petitioners admit that the requirements of CR 15(c) have been met but urge that the failure to name the property owners was inexcusable, since their identity was a matter of public record. The Court of Appeals disagreed, apparently influenced by the fact that only Burnstead was named during the hearings.

We find this factor unpersuasive. The property was sold and the contract recorded during July 1980, while the pleadings were filed in September 1980. Thus, had the respondent or its counsel checked the county records, the proper parties would have been immediately evident. This obviously was not done.

Generally, inexcusable neglect exists when no reason for the initial failure to name the party appears in the record. *See* Professor Orland's comment to CR 15, in 3A L. Orland, Wash. Prac., *Rules Practice* § 5185 (Supp. 1982). For example, the neglect was held to be inexcusable in *North Street* because the "applicants were at all times aware of the [indispensable] parties and yet still failed originally to name them." *North Street*, at 368–69. Here, the information necessary to properly implead the parties was readily available. Respondent's attorney simply did not inquire. This omission was inexcusable.

Respondent relies upon the time limitations contained in RCW 4.16.170 and RCW 43.21C.080(2)(a) to support an alternative theory that the amendments were timely. RCW 58.17.180 contains the applicable time limitation, therefore respondent's argument that these other provisions apply is without merit.

The decision of the Court of Appeals is reversed and the trial court's order of dismissal is reinstated.

WILLIAMS, C.J., and STAFFORD, UTTER, BRACHTENBACH, and DOLLIVER, JJ., concur.

DIMMICK, J. (concurring in part, dissenting in part)—I respectfully disagree with the majority's finding of inexcusable neglect for failure to initially name the proper parties in pleadings seeking review of the King County Council's Bristol View Two decision. No doubt a duty existed to verify the property owners involved in this dispute. It is equally certain that at the dispute's commencement, Burnstead was the property owner of record and was held out as such during the proceedings. Reliance on information pro-

vided over several years of public proceedings is understandable. Nothing occurred to indicate that ownership had changed until the parties were notified the day before hearing on the application for review that the Mowats would appear as record owners. While it may be neglect to fail to confirm the property owner from the public record, it was excusable under these facts. By holding otherwise, the majority suggests that any neglect is inexcusable.

I nevertheless concur in the majority result because the respondent failed to exhaust the administrative remedies prescribed by King County ordinance. I write separately to indicate my understanding that the majority position does not prohibit an appeal from the Council's action on a hearing examiner's recommendation where the appealing party was satisfied with the examiner's recommendation. Failure to file the required appeal only precludes review when, as here, the parties raise issues for which there is an adequate administrative remedy. *See Retail Store Employees Local 1001 v. Washington Surveying & Rating Bur.,* 87 Wn.2d 887, 909, 558 P.2d 215 (1976). If a party agrees with an examiner's recommendation, no issues are raised; nothing exists to require an administrative remedy. Since the party was not aggrieved, exhaustion will not apply to preclude review.

DORE, J. (dissenting)—The majority, under the doctrine of administrative remedies, held that appellants are barred from seeking review of the King County Council's approval of the subject plat. I would hold that the failure of neighboring property owners to appeal the preliminary recommendation of a hearing examiner on a plat application cannot proscribe such property owner's right to appeal the validity of a King County ordinance based on such examiner's recommendation. I would remand to the trial court for a hearing.

### ISSUES

1. Whether an appeal from a hearing examiner's recommendation is a jurisdictional prerequisite to an aggrieved

property owner's right to appeal from the passage of a King County zoning ordinance.

2. Whether the plaintiff, South Hollywood Hills Association for the Preservation of Neighborhood Safety and the Environment, timely filed its appeal in superior court and joined necessary parties.

I

On July 17, 1980, the King County hearing examiner conducted a public hearing on a proposed subdivision plat, Bristol View Two, applied for by Burnstead Construction Company. Four people who owned property near the proposed subdivision participated in the public hearing, along with representatives from Burnstead Construction Company, and King County personnel. The neighboring property owners expressed objections including: (1) inadequate public services such as police and fire protection, (2) increased noise and traffic hazards, and (3) the opinion that development at the proposed density would be inconsistent with the established character of the neighborhood. These objections were reflected in the hearing officer's findings 5 and 6. Over objections, the hearing examiner recommended to the King County Council (Council) that it grant preliminary approval to the plat. The four property owners did not appeal from the examiner's recommended order. On September 2, 1980, the Council adopted the examiner's findings and conclusions and enacted King County ordinance 5086, approving the plat.

Shortly thereafter, 21 neighboring property owners formed the South Hollywood Hills Citizens Association for the Preservation of Neighborhood Safety and Environment (Association). On September 11, 1980, pursuant to RCW 58.17.180, the Association applied for a writ of review of the Burnstead plat in King County Superior Court. The trial court dismissed it for failure to name the property owners as necessary parties.[2] On September 26, the Association

---

[2] Unknown to objecting property owners, Burnstead Construction Company had sold the property, which was the subject of the rezone application, to the

filed an amended application for a writ of review naming Burnstead Construction Company as a defendant. The day before the scheduled October 7 hearing on the application, counsel for the Association was notified that an attorney for the Mowats, record owners of the property, would appear at the hearing. The Association immediately applied to amend the application by inserting the Mowats as defendants. On October 7, the trial court dismissed the application for failure to comply with the 30–day limitation period provided in RCW 58.17.180.[3]

## II

The majority errs in applying the exhaustion doctrine for two reasons. First, the examiner's recommendation is not a final decision. The Council retains authority to make the final decision on the plat. Second, the county administrative scheme grants standing to different classes of people to appeal from (1) examiner recommendations, and (2) Council final decisions. Therefore, the doctrine of exhaustion of remedies is inapplicable to this case.

### EXAMINER RECOMMENDATION IS NOT A
### FINAL DECISION

The hearing examiner's recommendation is only advisory to the Council. The Council is free to adopt the recommendation, modify it, reject it, or remand the recommendation back for further factfinding, all independent of whether any "appeal" is taken from the hearing examiner's recommen-

---

Mowats during the quasi–legislative process.

[3]At the time this action was commenced in 1980, RCW 58.17.180 provided:

"Any decision approving or disapproving any plat shall be reviewable for unlawful, arbitrary, capricious or corrupt action or nonaction by writ of review before the superior court of the county in which such matter is pending. The action may be brought by any property owner in the city, town or county having jurisdiction, who deems himself aggrieved thereby: *Provided,* That application for a writ of review shall be made to the court within thirty days from any decision so to be reviewed. The *cost of transcription of all records* ordered certified by the court for such review shall be borne by the appellant."

RCW 58.17.180 was amended by the Legislature, Laws of 1983, ch. 121, § 5.

dation. *See* King County Code 20.24.210. An interested party could be satisfied with the hearing examiner's recommendation prior to Council action, but totally oppose the final ordinance passed by the Council after substantial changes were enacted. Pursuant to majority rationale, the Council could conceivably modify a satisfactory recommendation, and a previously satisfied party would be precluded from judicial review in superior court because he failed to "appeal" the hearing examiner's recommendation. This results in an "ambush theory" of zoning and subdivision approval and nullifies statutory and due process rights of adjacent property owners.

RCW 58.17.330 grants to counties the authority to adopt the hearing examiner system for acting on subdivision plat applications:

> As an alternative to those provisions of this chapter requiring a planning commission to hear and issue recommendations for plat approval, the county or city legislative body may adopt a hearing examiner system and shall specify by ordinance the legal effect of the decisions made by the examiner. The legal effect of such decisions shall include one of the following:
>
> (1) The decision may be given the effect of a *recommendation* to the legislative body;
>
> (2) The decision may be given the effect of an *administrative decision appealable within a* specified time limit to the legislative body.
>
> The legislative authority shall prescribe procedures to be followed by a hearing examiner.

(Italics mine.) The statute clearly gives counties the option to authorize the hearing examiner to issue either *advisory recommendations* or final decisions *appealable* to the legislative body, *i.e.,* the Council.

King County adopted the hearing examiner system in King County Code 20.24. King County Code 20.24.080(A) lists the functions performed by the hearing examiner in which he is authorized to issue *appealable final decisions.* Approval of subdivision plat applications is *not* listed among those functions. King County Code 20.24.070(A)

lists those functions in which the examiner is authorized to make only *recommendations* to the Council:

The examiner shall receive and examine available information, conduct public hearings and prepare records and reports thereof and *issue recommendations* to the council based upon findings and conclusions in the following cases:

. . .

4. *Applications for preliminary plats* . . .

(Italics mine.)

Under the provisions of the enabling legislation, RCW 58.17.330, the hearing examiner's *recommendation* on a preliminary plat application is *not* an appealable order. Any attempt by the County to require an appeal from an advisory *recommendation* in order to preserve judicial review conflicts with the enabling legislation and should be held invalid. *State v. Thomasson,* 61 Wn.2d 425, 378 P.2d 441 (1963). The Court of Appeals was correct in this case when it stated:

Because the council retains the responsibility for making a final decision on the merits, it may not step behind the cloak of the exhaustion doctrine to insulate itself from the appeal provided by RCW 58.17.180.

*South Hollywood Hills Citizens Ass'n v. King Cy.,* 33 Wn. App. 169, 175, 653 P.2d 1324 (1982).

DIFFERENT CLASSES OF PEOPLE HAVE STANDING
TO APPEAL EXAMINER RECOMMENDATION AND
COUNCIL FINAL DECISIONS

King County Code 20.24.210(B) provides for an appeal from the hearing examiner's recommendation. However, an analysis of this ordinance and the provisions of King County Code 20.24.240(A), granting review rights from the Council's final decision, reveals that the two ordinances grant standing to appeal to entirely different classes of people. The right of review of the Council decision is separate and distinct from the right of appeal from the examiner's recommendations. Therefore, the majority's application of the exhaustion doctrine in this case is

improper.

King County Code 20.24.210(B) states in part:

> Recommendations of the examiner in cases identified in Section 20.24.070 may be *appealed* to the council by an *aggrieved party* by filing a notice of appeal with the clerk of the council within fourteen calendar days of the date the examiner's written recommendation is mailed.

(Italics mine.) Thus, the ordinance provides that an *aggrieved party* may *appeal* the recommendation of the hearing examiner to the County Council.

The language of the ordinance changes when we examine King County Code 20.24.240(A), setting forth the right to seek judicial review in superior court of the *Council's final decision*:

> Decisions of the council in cases identified in Section 20.24.070 shall be final and conclusive action unless within twenty calendar days, *or within thirty calendar days for decisions approving or denying plats,* from the date of the council's adoption of an ordinance an *aggrieved person* applies for a *writ of certiorari* from the Superior Court in and for the county of King, state of Washington, for the purpose of *review* of the action taken . . .

(Italics mine.)

The right of *review* from the Council's final decision is granted to *aggrieved persons*.

It is an elementary rule of statutory construction that where certain language is used in one instance, and different language in another, there is a difference in legislative intent. *Seeber v. State Pub. Disclosure Comm'n,* 96 Wn.2d 135, 139, 634 P.2d 303 (1981). The use of the word *party* in the code section conferring a right of appeal from the examiner's recommendation is different from the use of the term *person aggrieved* in the section conferring the right of appeal from the Council's final decision. *See Shore Acres Imp. Ass'n v. Anne Arundel Cy. Bd. of Appeals,* 251 Md. 310, 247 A.2d 402 (1968). Statutes or ordinances which grant review rights to *persons* give standing to a broader class of people than those which grant appeal rights to

*parties. See Sterling v. County of Spokane,* 31 Wn. App. 467, 472, 642 P.2d 1255, *review denied,* 97 Wn.2d 1041 (1982); 4 R. Anderson, *Zoning* § 25.10 (2d ed. 1977). These two ordinances, granting appeal rights from examiner recommendations and Council final decisions, provide alternative remedies to which the exhaustion doctrine does not apply. *Scarborough v. Mayor & Coun.,* 303 A.2d 701 (Del. Ch. 1973).

### THE MAJORITY DECISION NULLIFIES DUE PROCESS RIGHTS OF SURROUNDING PROPERTY OWNERS

In applying the exhaustion doctrine, the majority has misread both the applicable county ordinances and RCW 58.17.180, which grants review rights to aggrieved property owners. The unfortunate result of this decision is to deny property owners judicial review of governmental action which substantially affects their property interests. This deprives the Association members of property rights without due process in violation of the fourteenth amendment to the United States Constitution.

In *Fuentes v. Shevin,* 407 U.S. 67, 80–81, 32 L. Ed. 2d 556, 92 S. Ct. 1983 (1972), the Supreme Court stated:

> The constitutional right to be heard is a basic aspect of the duty of government to follow a fair process of decisionmaking when it acts to deprive a person of his possessions. The purpose of this requirement is not only to ensure abstract fair play to the individual. Its purpose, more particularly, is to protect his use and possession of property from arbitrary encroachment—to minimize substantively unfair or mistaken deprivations of property, a danger that is especially great when the State seizes goods simply upon the application of and for the benefit of a private party. So viewed, the prohibition against the deprivation of property without due process of law reflects the high value, embedded in our constitutional and political history, that we place on a person's right to enjoy what is his, free of governmental interference.

We have consistently recognized that persons residing within an area encompassed in a zoning action have a sufficient protected interest to challenge the action. *Byers v.*

*Board of Clallam Cy. Comm'rs,* 84 Wn.2d 796, 529 P.2d 823 (1974); *Anderson v. Island Cy.,* 81 Wn.2d 312, 501 P.2d 594 (1972). The record in this case contains affidavits from 21 neighboring property owners who comprise the Association, specifically setting forth the detrimental effects on their property interests which will result from this proposed subdivision.[4] The majority's decision to deny these property owners judicial review of the Council action effectively allows the "arbitrary encroachment" on property interests which due process is designed to prevent.

### III

The second issue presented is whether the Association's amended pleading, filed after the expiration of the 30–day limitation period prescribed in RCW 58.17.180 and King County Code 20.24.240(A), relates back to the date of original filing. The majority holds the amendment could not relate back in this case because the failure of the Association to research the real estate records to ascertain the record owner of the property constitutes inexcusable neglect. I disagree. A statutory right of appeal should not be predicated on so flimsy a condition as the continual checking of real estate records in order to obtain justice in our court system.

Burnstead Construction Company was the original plat applicant and held itself out at all public hearings as the owner of the property. Burnstead sold the property to the Mowats on July 29, 1980, while the plat application was still pending. Due process should mandate that if the applicant sells his property interest during the application process, he must advise the Council immediately. If he fails to do so, no aggrieved property owner should be prejudiced.

The Association amended its pleading immediately upon receiving notice that the Mowats were record owners of the

---

[4]This court has recognized the right of nonprofit associations to represent the interests of property owners in proceedings for judicial review of local zoning actions. *Save a Valuable Env't v. Bothell,* 89 Wn.2d 862, 576 P.2d 401 (1978); *Loveless v. Yantis,* 82 Wn.2d 754, 513 P.2d 1023 (1973).

property. Under CR 15(c) an amendment adding a new party relates back to the date of the original pleading if (1) the new party had adequate notice of the action, and (2) the new party knew or should have known that, but for a mistake, the action would have been brought against him. When the Mowats purchased the property, they took subject to any appeals which might be taken from the Council's decision on the plat application. They had notice of this action and would in no way be prejudiced by allowing judicial review of the Council's decision. *See Miller v. Issaquah Corp.*, 33 Wn. App. 641, 657 P.2d 334 (1983). I would hold the amended pleading relates back to the original application and reinstate the Association's statutory right to judicial review.

## CONCLUSION

As the examiner exercises only an advisory function to the Council, he has no authority to enact an ordinance or even issue a final order. The Council alone performs the quasi–legislative function of enacting zoning ordinances. The statute provides that any aggrieved party has the right to appeal the passage of any such ordinances for a 30–day period. The Association was such an aggrieved party and cannot be prohibited from such an appeal to the superior court for the reason they didn't appeal the examiner's recommendation. Its appeal should be reinstated.

PEARSON, J., concurs with DORE, J.

Reconsideration denied April 2, 1984.