[No. 12926-1-I.   Division One.   September 30, 1985.]

JOE FERRY, *Appellant,* v. THE CITY OF BELLINGHAM, ET AL, *Respondents.*

---

*Asmundson, Atwood & Emmons* and *T. B. Asmundson*, for appellant.

*Bruce Disend, City Attorney*, and *Ian R. Sievers, Assistant*, for respondents Bellingham, et al.

*Smith & Rosellini* and *Philip E. Rosellini*, for respondent Jerns & Leveck.

SCHOLFIELD, A.C.J.—Joe Ferry appeals a summary judgment dismissing his claims against respondents Jerns and Leveck Funeral Chapel and the City of Bellingham, alleging error in the trial court's denial of an injunction to halt the operation of a crematory in Jerns' funeral home. We affirm.

Jerns' business is located in a single–family residence zone under a specific use permit granted by a city ordi-

nance in 1967 for the operation of a funeral home. The previous owner of the establishment obtained a ruling from the Bellingham Board of Adjustment in 1976 that a crematory may lawfully be operated in conjunction with an existing funeral establishment.

In 1982, Jerns sought confirmation from the City Planning Director regarding the Board's previous ruling. The Director, in a letter to Jerns dated March 9, 1982, referred to the 1976 ruling and then stated:

> Based on this interpretation, the fact that this funeral home was established as an approved use in 1967, and the information you have provided, it is my determination that a crematory may be established within the existing building at this site without further review by the Board of Adjustment, and without violation of regulations pertaining to non–conforming uses.

Within a matter of months, Jerns had installed and was operating a crematory on his premises.

Ferry began this action in July 1982, seeking a writ of mandamus directing the City to enforce zoning regulations so as to prohibit continued operation of the crematory and also seeking a permanent injunction.

■ First, Ferry contends that a crematory may not be operated in conjunction with a funeral home because it is not within the definition of a "funeral establishment", as provided in RCW 18.39.010.[1] We do not read the statute to exclude the operation of a crematory. Such an establishment is devoted to the "care and preparation for burial or disposal of dead human bodies". RCW 18.39.010(4). Obviously, an alternative to burial is encompassed by the statute in the language "or disposal". Another form of disposal is inurnment following cremation; therefore, a crematory is involved in the "preparation for . . . disposal of dead

---

[1]RCW 18.39.010(4) provides:

"'Funeral establishment' means a place of business licensed in accordance with RCW 18.39.145, conducted at a specific street address or location, and devoted to the care and preparation for burial or disposal of dead human bodies and includes all areas of such business premises and all tools, instruments, and supplies used in preparation and embalming of dead human bodies for burial or disposal."

human bodies". Furthermore, this licensing and regulatory statute would not be controlling in a zoning issue. That is properly addressed by referring to the zoning code of the City of Bellingham.

Ferry also contends that the Board of Adjustment exceeded its authority in its 1976 action deciding that "crematories are in common use in association with mortuaries and may be installed and operated on any premises occupied by an approved . . . funeral chapel . . ." He also contends that allowing the operation of a crematory enlarged the nonconforming use in violation of Bellingham Municipal Code 20.80.020.[2]

■ Jerns contends that Ferry is precluded from raising these issues because he failed to exhaust administrative remedies below. It is true that the Bellingham City Code requires an aggrieved party to appeal an official decision within 20 days; however, there is no evidence in the record to indicate that Ferry received notice within the appeal period of the Planning Director's letter to Jerns approving the installation of the crematory. We, therefore, conclude that Ferry was exempted from the exhaustion requirement because of lack of notice. *South Hollywood Hills Citizens Ass'n v. King Cy.*, 101 Wn.2d 68, 74, 677 P.2d 114 (1984).

---

[2]Former Bellingham Municipal Code 20.80.020 provided as follows:

"Regulations for nonconforming uses shall be as follows:

"A. Any existing use lawfully established prior to April 21, 1969, which is not permitted in the use district in which it is located is declared a nonconforming use and not in violation of this title.

"B. A nonconforming use shall not be enlarged, relocated, or rearranged after the effective date of the ordinance which made the use nonconforming.

"C. The board of adjustment may grant a conditional use permit for a period of not more than ten years permitting a nonconforming use to change to another use not permitted in the use district in which it is located provided the owner clearly demonstrates the following:

"1. That the structure, because of its particular design, cannot be reasonably used to house a permitted use;

"2. That the proposed use will be more compatible with the permitted uses of the use district than was the existing use; and

"3. That provisions have to be taken to safeguard adjoining properties from detrimental effects that might result from the proposed use."

An examination of the transcript from the Board of Adjustment's August 4, 1976 meeting reveals that the previous owner of the funeral home had sought a permit from the City's building department to install the crematory. The record reveals that after June 1975, the code allowed crematories as a conditional use in the light industrial (LM) classification with the following conditions:

1. The use shall be screened from any residential use,
2. All loading and unloading areas shall be screened from the view of surrounding properties.

Bellingham Municipal Code 20.06.121(d)(3) (codified in 1982 as 20.64.030(C)). Jerns' funeral home operated at all times as a nonconforming use in a single–family residence (RL–1) zone. Funeral chapels were permitted uses under the code only in the residential high–density (RH) district.

The transcript of the Board's 1976 meeting fairly reflects that the Board decided the operation of a crematory was an accessory use to a funeral home. The Board approved the following motion:

The Board finds that crematories are in common use in association with mortuaries and may be installed and operated on any premises occupied by an approved mortuary, funeral chapel, or other establishment providing the service of preparing human remains for disposal.

The applicable Bellingham zoning code provision defines "accessory use or structure" as a "use or structure on the same lot with, and of a nature customarily incidental and subordinate to, the principal use or structure." Bellingham Municipal Code 20.06.011.

Bellingham Municipal Code 20.06.020(d) provides:

Uses and buildings customarily accessory to the established principal use shall be allowed in all cases unless specifically prohibited or restricted.

Ferry contends the Board had no authority to take this action. However, the Bellingham zoning code expressly authorizes the Board of Adjustment to take the type of

action involved here.[3] There is ample basis in the record on appeal to support the conclusion that the primary function of Jerns' business will continue to be a funeral home and mortuary and that cremation is a customary and incidental function of that business. We conclude, as did the trial court, that the Board of Adjustment acted within its authority in adopting the motion of August 4, 1976. The effect of adopting the motion was a ruling that was binding upon Bellingham zoning authorities. The Planning Director acted lawfully and consistently with Bellingham Municipal Code 20.06.201 in concluding in his letter to Jerns of March 9, 1982 that a crematory could be lawfully operated as an accessory use in conjunction with the established funeral home.

■ Ferry contends that the ruling of August 4, 1976 was invalid because it was in conflict with Bellingham Municipal Code 20.80.020, prohibiting enlargement of a nonconforming use. We conclude, however, that, as an accessory use, the operation of the crematory did not constitute such an enlargement.

A valid nonconforming use carries with it the right to the exercise of those accessory uses which are considered customary and incidental to the principal use. Whether a

---

[3]Section 20.06.201, the Bellingham zoning code provision applicable here, provided:

"The board of adjustment shall review and determine any questions involving the proper interpretation or application of the provisions, use or district boundaries of this title that may be requested by any property owner, tenant, government officer, department, board, or commission affected. The board's decision shall be in keeping with the spirit and intent of this title and of the comprehensive plan.

"Recognizing that there may be uses not specifically mentioned in this title either because of advancing technology or any other reason, the zoning enforcement officer may permit such use to be established if it is clearly evident that the use is similar and in conformity with the designated permitted uses of the use district in which it is to be located. When there is doubt as to the proper classification of a use, the board of adjustment shall rule on the matter.

"The secretary of the board shall keep a record of all interpretations and rulings made by the board and such decisions shall be binding.

"The board shall report its findings to the planning commission when it appears desirable and necessary to amend this title. (Ord. 7783 (part), 1969)."

use is viewed in the perspective of a presently permitted use or of a use required to be permitted despite a present prohibition in the ordinance, there is no difference as to the extent to which it can be supplemented by customary accessory uses. The exercise of the right to engage in such an accessory use does not constitute a prohibited change of use where the accessory use does not achieve the status of an additional co–equal use but remains subordinate to the previously existing nonconforming use in scale, volume, and intensity.

(Footnotes omitted.) 4 A. Rathkopf & D. Rathkopf, *Zoning and Planning* § 51.01[3] (4th ed. 1985). The Bellingham zoning code is consistent with this principle. Section 20.06-.020(d) provides accessory uses "shall be allowed in all cases unless specifically prohibited or restricted."

When the Board of Adjustment made operation of a crematory an accessory use to a funeral home, they made the operation of the crematory lawful even in a funeral home that was a nonconforming use. The transcript of the hearing of August 4, 1976, reflects knowledge by the Board members that the funeral home involved was a nonconforming use. Because the operation of the crematory was valid as an accessory use, it did not constitute an enlargement of a nonconforming use.

While an argument can be made that decisions of the kind involved here should not be made without a public hearing, we find no requirement in the applicable zoning code for a public hearing when the Board is exercising interpretive functions under Bellingham Municipal Code 20.06.201.

Judgment affirmed.

GROSSE and WEBSTER, JJ., concur.

Review denied by Supreme Court November 22, 1985.