[No. 32530-2-I. Division One. April 3, 1995.]

SUMMIT-WALLER CITIZENS ASSOCIATION, ET AL, *Respondents*, v. PIERCE COUNTY, *Respondent*, TUCCI & SONS, INC., *Appellant*.

*Patrick Comfort* and *Comfort & Smith,* for appellant.

*Jon Schneidler,* for respondents Summit-Waller Citizens Ass'n, et al.

*John W. Ladenburg, Prosecuting Attorney,* and *Jill Guernsey, Deputy,* for respondent Pierce County.

BECKER, J. — This case involves a land use dispute between a gravel company and its suburban neighbors, the Summit-Waller Citizens Association and certain individuals (hereafter the Association). We decide in favor of the gravel company, Appellant Tucci & Sons, Inc., concluding that it has established a lawful and vested nonconforming use of its property. We further hold that the trial court properly rejected the Association's belated spot zoning challenge to Pierce County's zoning ordinances pertaining to Tucci.

## I

Tucci owns $37^1/_2$ acres of property (the property) located between the Tacoma city limits and Waller Road East. Several industrial operations have for years coexisted there with the predominant residential and agricultural uses. Tucci originally used the property as a source of gravel.

In July 1969, Pierce County granted Tucci's application for an unclassified use permit to expand its use to include a business office headquarters, shop and storage yard and also to add a gravel crushing plant and asphalt plant. The permit required that Tucci restore the area mined after completion of gravel mining. Tucci moved its office headquarters, maintenance shop and storage yard to the Waller Road property in 1970.

In 1976 and 1977, the County rezoned the area. Unlike the previous "general use" classification, the new "suburban agriculture" classification did not permit contractors' headquarters and yards.

In October 1989 and December 1990, respectively, Pierce County adopted the ordinances that the Association challenges in this action. The combined effect of the ordinances was to allow legally existing contractors' yards and related offices to continue or be expanded, subject to the County's approval of a binding site plan. Following these decisions by the county council, Tucci began extensive efforts, including engineering, to propose a binding site plan including further expansion of its offices.

The Association filed suit in May 1992 against the County and Tucci,[1] asking the court to void the ordinances and to enforce the land restoration requirements of Tucci's 1969 permit. Tucci counterclaimed, requesting a declaration that it possessed a vested nonconforming right to use the property for its contractor's headquarters, shop, and yard. The trial court rejected both parties' claims. Both have appealed.

## II

### NONCONFORMING USE

Tucci assigns error to the trial court's conclusion that the use of its property for a headquarters, shop and yard is authorized solely by the 1969 unclassified use permit and does not exist as a lawful nonconforming use independent of the permit.

■ To establish a lawful nonconforming use, Tucci had to prove:

(1) That the use existed on the date specified in the zoning code, (2) that it was lawful, and (3) that after the zoning code took effect, it was not abandoned or discontinued for 1 year or more.

*State ex rel. Lige & Wm. B. Dickson Co. v. County of Pierce,*

---

[1]Two other defendants named in the complaint are not involved in this appeal.

65 Wn. App. 614, 623-24, 829 P.2d 217, *review denied*, 120 Wn.2d 1008 (1992).

 Nonconforming uses are not favored in the law. *Andrew v. King Cy.*, 21 Wn. App. 566, 570, 586 P.2d 509 (1978), *review denied*, 91 Wn.2d 1023 (1979). However, they are vested property rights that are protected and "cannot be lost or voided easily". *Van Sant v. Everett*, 69 Wn. App. 641, 649, 849 P.2d 1276 (1993). Only an abandonment can extinguish a nonconforming use. *See Lige & Wm. B. Dickson*, 65 Wn. App. at 623-24.

As was true in *Lige & Wm. B. Dickson* with respect to a neighboring contractor's use in this same Summit-Waller area, Tucci's use existed before the downzone; the use was lawful under the general use classification which permitted contractors' yards and offices outright; and Tucci never abandoned that use. These elements are implicit in the trial court's findings and are supported by substantial evidence in the record.[2]

The trial court nevertheless concluded that by submitting the headquarters and yard to the unclassified use permit, Tucci forfeited the pre-1976 designation of these uses as classified and agreed to be bound solely by the permit. The trial court rested this conclusion upon several findings linking Tucci's relocation, construction and operation of the headquarters, shop and yard to the issuance of the unclassified use permit.

---

[2]Finding of fact 57 states that the building permit for the office headquarters was issued after the approval of the unclassified use permit in July 1969. The record indicates the permit to construct a maintenance shop was issued March 5, 1970. In each case, construction began shortly after the issuance of the permit. Tucci moved its entire operation, including the headquarters, shop and contractor's yard, to the property on July 1, 1970. These undisputed events support the first element that the uses existed before the date of the downzone. Finding of fact 22 states that at the time Tucci wished to move its headquarters to the property, the existing general use classification allowed contractors' yards, offices and shop facilities. This finding supports the second element of lawfulness. The trial court did not find that Tucci had abandoned its nonconforming use and there is no evidence of abandonment after the downzone. This satisfies the third element.

■ Whether the holder of a legal nonconforming use forfeits such use by including it in an application for an unclassified use permit appears to be a question of first impression in Washington. A Colorado court has held in a similar situation that a permitted use adds to, rather than substitutes for, the use otherwise allowed on a property. *Penrose Hosp. v. Colorado Springs*, 802 P.2d 1167 (Colo. App. 1990). In *Penrose*, the plaintiff hospital desired to open a substance abuse facility, a use permitted by the underlying zoning of its property. The city denied permission because a conditional use permit covering the property allowed its use for hospital purposes. The court held for the hospital, concluding that "the approved development plan granting Penrose a conditional use does not deprive Penrose of the right to make use of its property in accordance with the underlying zoning." *Penrose*, at 1168. *Penrose* is persuasive. Tucci's 1969 unclassified use permit for gravel mining, gravel crushing and an asphalt plant added to, but did not override, Tucci's existing right to use the property for its contractor's headquarters, shop and yard. The fact that Tucci unnecessarily included the headquarters, shop and yard in its application for an unclassified use permit does not change this result.

■ The Association relies in part on the trial court's finding of fact 59 that until 1980, Tucci had expressed no intent to use the headquarters and yard permanently. Intent is not an element required to establish a nonconforming use. The court does not examine intent unless a cessation of actual use raises an issue as to whether the cessation is temporary or permanent. *See Andrew*, at 571-72; *see also Van Sant*, 69 Wn. App. at 648. The trial court should not have considered this finding in reaching its conclusion because intent is irrelevant here.

■ The Association also argues that Tucci's acceptance of the benefits and restoration requirements of the permit operated as a relinquishment of its nonconforming use rights. The argument rests on finding of fact 61, to which

Tucci assigns error.[3] On review of a trial court's declaratory judgment, this court will not disturb findings of fact that are supported by substantial evidence. *Nollette v. Christianson*, 115 Wn.2d 594, 599-600, 800 P.2d 359 (1990). In this instance, substantial evidence is lacking for the proposition that the permit required Tucci to remove its headquarters, shop and yard at the conclusion of the gravel mining operation. The permit itself expresses no such requirement. In its findings, the trial court referenced a 1983 ruling by the county hearing examiner which extended the use permit under certain conditions preserving the property. But this ruling explicitly declined to resolve whether or not Tucci had established a lawful nonconforming use.[4] Similarly, the county council attached to its 1989 ordinance an express finding that "[t]he question of whether contracting offices, shops, and yards established by Tucci and Sons under General zoning may remain after closure of surface mining has not been decided by the County." Because finding of fact 61 is not supported by substantial evidence, it may not serve as a basis for concluding that Tucci agreed to be bound solely by the permit.

The Association, contending that the headquarters, shop and yard were accessory to the gravel mining operation before the downzone, argues that an accessory use may not ripen into a nonconforming use. The characterization of Tucci's use prior to the downzone as either principal or accessory is not a relevant consideration here.[5] The ordinances themselves establish the lawfulness of the headquarters, shop and yard

---

[3]"Use of the property as a contractor's yard was inconsistent with the restoration requirements of UP6-69 which Tucci had previously accepted without objection, including the obligation to retain the overburden on the site, recover each tract with overburden or topsoil, plant vegetation prior to proceeding to the next tract, and convert the site to its highest and best use once the gravel mining was completed." Finding of fact 61.

[4]Finding of fact 46, unchallenged on appeal, recognizes that "all claims of Tucci of nonconforming use rights were preserved" in the hearing examiner's ruling.

[5]The trial court's findings and conclusions do not actually resolve whether the headquarters, yard and shop were principal or accessory. The court's conclusion

without regard to whether they were principal or accessory. The clear purpose of the ordinances was to recognize a use such as Tucci's as "legally existing". A contractor's yard was "legally existing", and thus subject to the accommodation provided by the ordinances, if it was "an area for the storage, repair, or maintenance of equipment and materials, business offices, or other uses legally existing on or before the effective date of this Chapter." Pierce County Code 18.70.200. Tucci's use fits this description.

Setting aside those findings that are either legally irrelevant or unsupported by substantial evidence, the only conclusion to be drawn from the remaining findings is that Tucci established a vested nonconforming use of its property for a contractor's headquarters, shop and yard.

### III

#### TIMELINESS OF SUIT

The Association sought invalidation of the ordinances revising the planning and zoning for the Summit-Waller area on various theories. The Association filed its suit for a declaratory judgment on May 12, 1992 — 31 months after enactment of the first ordinance (an amendment to the Summit-Waller community plan, adopted October 3, 1989) and 17 months after enactment of the second ordinance (zoning regulations adopted December 18, 1990, implementing the Summit-Waller community plan). Tucci and the County brought a motion for summary judgment to dismiss the claims against the ordinances as not having been brought "within a reasonable time nor in a timely fashion". The court granted this motion as to the claims that the adoption of the ordinances was arbitrary and capricious spot zoning and that their adoption violated the State Environmental Policy Act of 1971 (SEPA).

The Association first assigns error to the procedure on summary judgment. The judge who first heard the motion

that Tucci failed to establish a nonconforming use depends entirely on the erroneous determination that all of Tucci's use of the property was governed by the temporary unclassified use permit.

did not decide it but instead left the matter to the "trial court". Shortly before trial, the court scheduled reargument of the motion on short notice before a second judge, who decided the summary judgment motion. This procedure violated no court rule. The Association had adequate notice of the hearing and was not prejudiced by the rehearing.

On the merits, the Association contends that a suit seeking to invalidate a legislative zoning enactment as arbitrary and capricious may be brought at any time, limited only by laches.[6] Tucci and the County take the position that the timeliness of the suit should be determined by analogy to the 30-day period in the Pierce County Code for "appeals" from decisions of the county council, Pierce County Code 18.10.800J.

The statutes governing declaratory judgment actions, like those governing writs of certiorari, contain no timeliness provisions. The rule of "reasonable time by analogy" determines the timeliness of a certiorari proceeding. *Federal Way v. King Cy.*, 62 Wn. App. 530, 536, 815 P.2d 790 (1991). The court selects a time limit for appeal of a similar decision as prescribed by statute, court rule or other provision. *Federal Way*, at 536-37. These time limits are short. Thirty days is typical. For example, in considering a rezone ordinance, this court applied the 30-day period for appeal of a preliminary plat under RCW 58.17.180 and suggested that "a general 30-day rule for appeals from land use decisions" would be appropriate. *Concerned Organized Women v. Arlington*, 69 Wn. App. 209, 217, 847 P.2d 963, *review denied*, 122 Wn.2d 1014 (1993).[7]

---

[6]Whether the Association's spot zoning claim was foreclosed under a laches standard was not an issue considered by the court on summary judgment.

[7]This court has also held that a reasonable time for bringing a challenge to an areawide zoning and community plan revision is a 90-day period prescribed in SEPA for appeals from public actions. *Bothell v. King Cy.*, 45 Wn. App. 4, 11 & n.8, 723 P.2d 547 (1986). When more than one appeal period is analogous, the longer applies. *Akada v. Park 12-01 Corp.*, 103 Wn.2d 717, 719, 695 P.2d 994 (1985). Whether the 30-day period urged here by the County and Tucci is correct rather than the 90-day period in view of *Bothell* is not an issue before us because it is undisputed that the Association waited longer than 90 days to file suit.

■ *Federal Way*, relied upon by Tucci and the County, applied the "reasonable time by analogy" rule for certiorari to a case brought as a declaratory judgment action. The action attacked the facial validity of an emergency clause in a King County street vacation ordinance. The court rejected a proposed 2-year limitation period in favor of one extending only 20 days from enactment of the ordinance. This court affirmed.

> The consistent policy in this state is to review decisions affecting use of land expeditiously so that legal uncertainties can be promptly resolved and land development not unnecessarily slowed or defeated by litigation-based delays.

*Federal Way*, 62 Wn. App. at 538.

The Association seeks to distinguish *Federal Way* by arguing that passage of the street vacation ordinance in that case was in reality a quasi-judicial proceeding because the interests affected were those of specific, readily identifiable persons. The Association contends that because legislatively enacted areawide zoning and planning measures, such as the Pierce County ordinances involved in this case, bring about change applicable to a broad area without personal notice to property owners, laches is the appropriate standard for determining timeliness.[8] We disagree.

Characterization of an action as legislative, rather than quasi-judicial, determines that review by a statutory writ of certiorari is inappropriate and also that the appearance of fairness doctrine does not apply. *Raynes v. Leavenworth*, 118 Wn.2d 237, 243-45, 821 P.2d 1204 (1992); *see also Leavitt v. Jefferson Cy.*, 74 Wn. App. 668, 673-77, 875 P.2d 681 (1994). Characterization of an action as legislative does not, however, necessarily dictate longer time limits for filing lawsuits seeking to invalidate areawide zoning and planning decisions by city and county legislative bodies. The policy of

---

[8]By this standard, the street vacation in *Federal Way* would not necessarily be characterized as quasi-judicial. Although the decision does not address the issue, there is no personal notice requirement for a street vacation. Publication and posting are sufficient. RCW 35.79.035.

deference to legislative decisions that underlies the holding in *Raynes* has no bearing on the issue of timeliness. We look, rather, to the policy favoring expeditious review of land use decisions:

> If there were not finality, no owner of land would ever be safe in proceeding with development of his property. . . . To make an exception for anyone who does not receive a formal notice of the board action would completely defeat the purpose and policy of the law in making a definite time limit.

*Deschenes v. King Cy.*, 83 Wn.2d 714, 717, 521 P.2d 1181 (1974). In zoning and planning matters, judicial review of the action complained of should be reasonably contemporaneous for the additional reason that "the facts to be considered are not fixed in time, but involve ever-changing factors such as surrounding land usage, community resources, streets, traffic patterns, sewers, police and fire protection, schools, population, etc." *Bolser v. Zoning Bd. for Aubry Township*, 228 Kan. 6, 15, 612 P.2d 563, 570 (1980).

The Association nevertheless contends that under *Pierce v. King Cy.*, 62 Wn.2d 324, 333-34, 382 P.2d 628 (1963), a fixed statute of limitation may not govern an attack on a legislative zoning enactment.[9]

*Pierce* applies the rule of laches only to situations where the aggrieved property owners did not have actual knowledge of the zoning action at the time the action was taken and "would not normally be expected to learn" of it. *Pierce*, 62 Wn.2d at 334; *Gifford v. Spokane Cy.*, 9 Wn. App. 109, 113, 510 P.2d 1166 (1973); *see Deschenes*, 83 Wn.2d at 717-18. The issue thus presented by *Pierce* is whether the Asso-

---

[9]The order on summary judgment reserved for trial the issue whether the defense of laches barred the "remaining claims" of the Association. After trial, the court entered findings that the Association did not reasonably know about the ordinances until 6 months before filing suit, and that a 6-month delay did not constitute laches under the circumstances. Whether 6 months from the time of *actual* knowledge can be an acceptable delay in a land use matter is debatable even under the laches standard applied in *Pierce*, where the time elapsed before filing suit was 2 months. We need not address that issue in this case because the Association did not actively pursue its "remaining claims" — that the county council acted without authority and in violation of equal protection — either at trial or on appeal.

ciation, in responding to the motion for summary judgment, raised a material issue of fact tending to show that, at the time the ordinances were enacted, they neither received actual notice of the contested enactments nor should have been expected to learn of them.

It is undisputed that individual Plaintiffs participated actively in the many months of public meetings and hearings that preceded the adoption of each ordinance. On May 2, 1989, the county council adopted the original Summit-Waller subarea community plan, to which the Plaintiffs do not object. On that date, however, the council directed the planning commission to conduct further public hearings in order to consider amendments to the plan dealing with land use designations involving heavy commercial or industrial operations of Tucci as well as others. In response, the planning commission prepared the presently contested plan amendment recognizing legally existing contractors' yards. After several public hearings before the planning commission and a committee of the county council, the council on October 3, 1989, held a hearing on that amendment to the plan and then adopted it. The County next took up implementing zoning regulations. After hearings in May and June 1990, the zoning ordinance was first scheduled for consideration by the county council on August 21, 1990, but further work continued throughout the fall. Proposed amendments creating the construction and contractor services zone classification were considered in committee during November 1990, referred back to committee after a council hearing, and then included in the final version of the zoning ordinance adopted by the council on December 18, 1990, following further public hearing.

For the purpose of providing actual notice, the county council maintained a list including names of persons who had indicated an interest in the subject matter of Summit-Waller zoning. The record before the court on summary judgment establishes that at least 6 of the 12 named individual Plaintiffs in this action were among those who received actual notice of the hearing held October 3, 1989.

The notice advised recipients that the proposed amendment would "Recognize Legally Existing Contractor's Yards and Other Similar Operations Associated with Surface Mining After Mining Operations Have Been Discontinued". The same Plaintiffs received notice of the public meeting set for August 21, 1990, at which the council began to consider the proposed implementing regulations.[10]

In response to these unrebutted facts, Plaintiff Gary Radke, one of those who received actual notice, supplied an affidavit in which he asserts that each of these ordinances was adopted "hurriedly . . . without publicity, wide-spread public debate, or . . . general public awareness" in "an unusual manner", causing himself and others in the community "to be unaware of their enactment until long after the events had occurred." He claims he believed "the matter was settled" at the time of the adoption of the original plan, May 2, 1989. He admits that he had "generally been aware of the original text of the zoning regulations" but "believed them to simply be implementing the original version of the comprehensive plan which I believed had been adopted without modification as previously noted". He refers to the construction and contractor services zone classification as a "last minute creation".

■ To withstand a motion for summary judgment, the nonmoving party may not rely on having its affidavits considered at face value, but must set forth specific facts that sufficiently rebut the moving party's contentions. *Seven Gables Corp. v. MGM/UA Entertainment Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986). The fact that the final version of the zoning ordinance contained a zone classification that did not appear in earlier drafts is not inherently unusual. The Plaintiffs have not rebutted evidence establishing that the zone classification pertaining to Tucci was openly debated and available for public comment prior to its adoption. Plaintiffs had actively participated in the development of the

---

[10]The record also establishes that the County published notice of the scheduled hearings on each of the ordinances in the South Pierce County Dispatch, issued weekly in Eatonville. The Plaintiffs raise no issue as to the County's compliance with notice requirements.

Summit-Waller community plan and zoning regulations. They had received personal notice that the council would consider the comprehensive plan amendment of which they now complain. They had the opportunity to review the final enactments. Unlike the claimants in *Pierce*, they were in a position where they would "normally be expected to learn" of the provisions in the final ordinances. *Pierce*, 62 Wn.2d at 334. A general averment of a mistaken subjective belief that the ordinances did not contain the contested provisions is insufficient to defeat a motion for summary judgment under these circumstances. The Plaintiffs' knowledge of the ordinances, both actual and constructive, justifies the conclusion that they did not bring their action within a reasonable time.

■ In summary, we affirm the trial court's dismissal of the Association's spot zoning claim as untimely. We hold that challenges to land use decisions by declaratory judgment, regardless of their characterization as legislative or quasi-judicial, must be filed within a reasonable time as measured by an analogous statute of limitations.[11]

■ The dismissal of the SEPA claims must also be affirmed, since their timeliness is dictated by the limit for challenging the underlying governmental action with which they are linked. *See Waterford Place Condominium Ass'n v. Seattle*, 58 Wn. App. 39, 43, 46, 49-50, 791 P.2d 908, *review denied*, 115 Wn.2d 1019 (1990).

## IV

### MANDAMUS

■ The Association sought a writ of mandamus to compel enforcement of the permit conditions relating to restoration of Tucci's property. The court dismissed this claim with-

---

[11]The Association contends that a short statute of limitations unacceptably restrains the court's power to review arbitrary and capricious legislative action. We observe that the superior court retains an inherent discretionary power to grant a constitutional writ of review in appropriate situations. *See Bridle Trails Comm'ty Club v. Bellevue*, 45 Wn. App. 248, 252, 724 P.2d 1110 (1986). The Association did not petition for such a writ, nor does it appear that they would have had any basis to do so. *See Concerned Organized Women v. Arlington*, 69 Wn. App. 209, 221, 847 P.2d 963, *review denied*, 122 Wn.2d 1014 (1993).

out prejudice as premature, based on the Association's failure to exhaust administrative remedies. The Association assigns error, relying on *Gardner v. Pierce Cy. Bd. of Comm'rs*, 27 Wn. App. 241, 243-44, 617 P.2d 743 (1980). In *Gardner*, the plaintiffs had no notice of the action to which they later objected in court and consequently lacked the opportunity to exhaust their administrative remedies. That is not the case here, nor has the Association shown that resort to administrative procedures would be futile. *See Fallon v. Leavenworth*, 42 Wn. App. 766, 768-70, 710 P.2d 208 (1985), *review denied*, 105 Wn.2d 1020 (1986). The court properly dismissed the Association's request for mandamus.

V

The judgment of the trial court is reversed and remanded in part and affirmed in part. On remand, the trial court is directed to enter a declaratory judgment recognizing Tucci's nonconforming use of the property, consistent with this opinion.

WEBSTER and AGID, JJ., concur.

Reconsideration denied May 9, 1995.

Review denied at 127 Wn.2d 1018 (1995).