[No. 15744-0-III.   Division Three.   March 19, 1998.]

DONWOOD, INC., *Appellant*, v. SPOKANE COUNTY, ET AL., *Respondents*.

*Stephen K. Eugster* of *Eugster Haskell Law Offices*, for appellant.

*James R. Sweetser, Prosecuting Attorney*, and *Robert B. Binger, Deputy*, for respondents.

SWEENEY, J. — "Any county . . . may make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws." Const. art. XI, § 11. A county is authorized to create zone classifications that effectively regulate the use of buildings, structures, and land among business, residential, agricultural, industrial, and other purposes. RCW 36.70.750(1). In 1985, Spokane County adopted a "program to implement" to effect a new comprehensive zoning plan. Under the program to implement, conditions imposed in previous land use proceedings were carried forward into the new zone. But changes to these conditions were evaluated based on whether the current application for land use was made before or after the five-year transition period. The question here is whether the County can, through its program to implement, require compliance with conditions imposed on the Donwood, Inc., property as part of a 1977 rezone proceeding when those conditions may be inconsistent with

the current zoning. We conclude that it can and affirm the trial court, which affirmed the imposition of conditions for Donwood's development.

## FACTS

Three events provide the factual background for this controversy.

*1977 Rezone—Agricultural to Freeway Commercial.* In 1976, Donwood applied to rezone a 26-acre parcel of property from agricultural to freeway commercial. Donwood wanted to develop a truck stop, motel, and restaurant.

After a public hearing, the Spokane County Planning Commission recommended to the county commissioners that the rezone be approved subject to a list of conditions, including road improvements and development of a traffic control plan for the site. Adjacent property owners appealed. After a second public hearing, the commissioners adopted written findings and an order accepting the recommendations of the planning commission, including the conditions suggested by it. The county commissioners also imposed additional conditions. Donwood did not develop the property and did not file a final revised development and traffic control plan.

*1985 Adoption and Implementation of a Spokane County Comprehensive Zoning Plan—Program to Implement.* In 1980, Spokane County adopted a comprehensive land use plan for the unincorporated areas of the county. The area covered by the plan included the Donwood property. The County adopted a zoning code to implement the overall comprehensive land use plan. The County also adopted a "program to implement" to effect the transition from the old zoning categories to the new categories.

The program to implement contained a crossover schedule that reclassified land to new zones. It provided for this crossover zoning to take place at the end of a five-year transition period. Except for the earlier rezone to freeway

commercial, the Donwood property would have been zoned some level of residential under the crossover schedule. Because the Donwood property had already been subject to the public hearing process when rezoned freeway commercial, it was reclassified as Regional Business-3 (B-3), but remained subject to the conditions imposed earlier.

The stated purpose of the program to implement was "[t]o promote a more predictable and equitable transition from the old ordinance to the 'new' code . . . ." Spokane County, Program to Implement § 1, at 3 (Apr. 11, 1985). Nevertheless, the reach of the program to implement went beyond the five-year transition period with some property, including Donwood's. The County recognized "the existence of 'contractual' conditions designed to protect adjacent owners . . . . These conditions, or contracts, run with the land and were imposed at a public hearing through careful deliberation and in the public interest." Program to Implement § 1, at 3. Based on this language, the County intended to continue the conditions imposed as part of the 1977 freeway commercial designation on Donwood's property.

*1995 Application for Development.* On October 5, 1994 (approximately four years after the expiration of the five-year transitional period), Donwood applied to develop 20 acres of its property for B-3 zone uses. The County processed the application as a change of conditions, within the B-3 zone, from those conditions originally imposed as part of the 1977 rezone.

The County's authority for treating Donwood's application as an application for change of conditions was the "contractual condition" language of the program to implement. It provided that during the five-year transition, any change of condition would be evaluated under the criteria of the old zone classification—freeway commercial.

Donwood submitted a site plan during the review process. This plan showed only the general location of buildings and only estimated square footage. It failed to specify the proposed uses of the buildings, the location of any road

improvements, landscaping, or other details required for the County to adequately evaluate both the suitability and environmental impact of the proposed development.

Nonetheless, on November 16, 1994, the County issued a determination of nonsignificance (DNS) for the proposed change. The environmental checklist required that Donwood construct roads. The planning department was unable to determine the various impacts from the project, including those related to traffic and noise, because of the lack of specificity in the site plan. The DNS was then circulated to public agencies for comment.

At a public hearing on December 15, 1994, the planning department made recommendations, which included a list of conditions suggested by public agencies. The planning department staff report recommended denial of the application, noting the general nature of the request and the absence of a detailed plan. Specifically, the proposed site plan did "not demonstrate compliance with the development standards of the existing Regional Business (B-3) zone for parking, setbacks, landscaping, building coverage or building height."

On December 16, 1994, a hearing examiner committee approved the change of conditions subject to additional conditions listed in the planning department staff report. The committee also required that Donwood comply with all of the approval conditions of the 1977 rezone, and with B-3 zone standards.

Donwood appealed to the county commissioners. In a de novo review on February 21, 1995, the county commissioners adopted the findings, conclusions and decision of the hearing examiner committee. The commissioners modified a condition so that a detailed site plan review could be done administratively if there were less than 1,600 trips per day. After the 1,600 trip per day threshold, Donwood would have to provide a full detailed site plan review through a public hearing process.

Donwood sued for a writ of certiorari and declaratory

judgment. The trial court affirmed the county commissioners' decision.

## DISCUSSION

*Standard of Review.* We review issues of fact for substantial evidence. RCW 7.16.120(5). We review questions of law de novo. RCW 7.16.120(3); *Hilltop Terrace Homeowner's Ass'n v. Island County*, 126 Wn.2d 22, 29-30, 891 P.2d 29 (1995).

*Transitional Program to Implement.* The heart of Donwood's argument is that the County had no authority to require compliance with the "contractual condition" clause of the program to implement. Two arguments follow that assertion. First, that Donwood had a vested right in the 1977 freeway commercial zone designation with its attendant conditions. Second, that the property was now zoned B-3. And, therefore, the County could not condition development beyond what was required for other B-3 developments. We will address these two arguments after we resolve the threshold question.

■■ We begin with article XI, section 11 of our state constitution. It permits the County to "make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws." RCW 36.70.560(1) authorizes a county to set zoning boundaries and within those zoning boundaries to establish "separate controls over the type and degree of permissible land uses . . . ." If a condition imposed on property constitutes a taking, the condition must have an essential nexus and be roughly proportional to the burdens imposed on the public by the property owner. *Dolan v. City of Tigard*, 512 U.S. 374, 386, 391, 114 S. Ct. 2309, 129 L. Ed. 2d 304 (1994). But other land use regulation, as an exercise of police power, must only be reasonable and rationally related to a legitimate purpose of government. *Norco Constr., Inc. v. King County*, 97 Wn.2d 680, 684-85, 649 P.2d 103 (1982). This broad constitutional grant of political authority,

including the authority to regulate a land use, accommodates Spokane County's program to implement and the contractual condition clause.

■■ The purpose of the program was "[t]o promote a more predictable and equitable transition from the old ordinance to the 'new' code . . . ." Program to Implement § 1, at 3. The County recognized that conditions had been imposed during previous land use proceedings in order to protect adjacent property owners and the general public interest. It was a reasonable exercise of zoning authority to continue in force previous land use conditions, even in the face of a zoning change, if those conditions are reasonable and rationally related to a legitimate governmental interest. *Norco Constr.*, 97 Wn.2d at 684-85.

In 1977, the County imposed conditions on the Donwood property to effect a transition from an agricultural to a freeway commercial designation. These conditions were the result of the County's efforts to identify and mitigate the environmental impact of the proposed development. The conditions were also the result of public hearings, which identified public concerns over the development.

Under the program to implement, the County designated this property B-3 because this classification was most similar to the previous freeway commercial designation. As we have noted, the County had already held public hearings and imposed conditions following those hearings to mitigate the impact of this development. The 1977 rezone allowed for development of an automobile and truck service station, a repair facility, restaurant-convenience store, motel and similar facilities—valid B-3 uses. The proposed development and its anticipated impact have remained the same. And therefore so has the need for conditions to mitigate the development's impact.

Under the provisions of RCW 36.70.560, official controls may be adopted by ordinance to further the objectives and goals of a comprehensive plan. A zoning ordinance is to be construed as a whole to ascertain the purpose and effect of a particular section. *Indian Trail Property Owner's Ass'n v.*

*City of Spokane*, 76 Wn. App. 430, 438, 886 P.2d 209 (1994). The program to implement is an appropriate part of this zoning ordinance. It was designed to accomplish the crossover zoning of a large amount of property. The program flagged certain areas that had been the subject of previous zoning decisions because the rezone might well impact the expectations of both property owners and the adjacent property owners—expectations fixed as of the 1977 rezone.

In sum, Spokane County could implement its comprehensive zoning plan through this program to implement, including its continuing requirement of the 1977 rezone conditions.

*Vested Rights.* Donwood argues that its rights vested with the 1977 rezone. Laying aside the merits of that argument, Donwood fails to explain what difference this makes. What conditions have been imposed under the most recent application for development that exceed, or are contrary to, earlier conditions attached to the freeway commercial designation? Donwood makes no showing that the old "freeway commercial" conditions imposed are more onerous than those which would have been allowed under a B-3 designation.

But Donwood misapprehends the effect of the vested rights doctrine in any event. Donwood asks that the County treat the 1977 rezone, or the crossover to the B-3 zone, as something that it is not—an event that triggered a vested right on the part of Donwood. Rights did not vest because the 1977 rezone was only partially completed. Donwood failed to submit a final site plan or develop the property.

Washington's vested rights doctrine vests rights to a land use proposal under the regulations in effect at the time a completed building permit application is filed, regardless of subsequent changes in zoning or other land use regulations. *Erickson & Assocs., Inc. v. McLerran*, 123 Wn.2d 864, 867-68, 872 P.2d 1090 (1994). In 1987, the doctrine was codified in RCW 19.27.095 and RCW 58.17.033. These provisions require that the application be completed. They

also extended the doctrine to applications for land division. *Noble Manor Co. v. Pierce County*, 133 Wn.2d 269, 275, 943 P.2d 1378 (1997).

The purpose of vesting is to provide a measure of certainty to developers, and to protect their expectations against fluctuating land use policy. *West Main Assocs. v. City of Bellevue*, 106 Wn.2d 47, 50-51, 720 P.2d 782 (1986). Donwood's reliance on *Summit-Waller Citizens Ass'n v. Pierce County*,[1] is also misplaced. In *Summit-Waller*, a gravel company established a lawful and vested nonconforming use of its property. This is not the case here as Donwood has not filed a completed building permit. The vested rights doctrine does not apply.

*State Environmental Policy Act Conditions.* Donwood also apparently challenges the County's authority to impose State Environmental Policy Act (SEPA) conditions on its development.

In 1984, Spokane County adopted Spokane County Code (SCC) chapter 11.10 to implement the SEPA. SCC 11.10.020. Under SCC 11.10.160, the county code and the zoning code are included in the list of substantive authority that county agencies may use to condition or deny land use actions under SEPA. SEPA itself overlays and supplements all other state laws. RCW 43.21C.120(3), .060. Counties therefore have authority under SEPA to condition or deny a land use action based on adverse environmental impacts even where the proposal complies with local zoning and building codes. *West Main*, 106 Wn.2d at 53.

WAC 197-11-310 requires a threshold decision under SEPA for any proposed "action" as defined by WAC 197-11-704. WAC 197-11-350(5) permits agencies to specify mitigation measures in their DNSs as a result of comments by either agencies, or the public, or as a result of agency planning. Under WAC 197-11-340 and WAC 197-11-350, an agency may impose mitigative restrictions based upon public comments after issuance of a DNS. *Levine v. Jefferson*

---

[1]77 Wn. App. 384, 895 P.2d 405, *review denied*, 127 Wn.2d 1018 (1995).

*County*, 116 Wn.2d 575, 579, 807 P.2d 363 (1991). Here, the comments noted on the environmental checklist indicate that the reviewing official was unable to determine various impacts from the proposed development without a·specific site plan. Accordingly, the County had authority, limited by legitimate governmental interest, to impose additional conditions based upon comments by public agencies to mitigate the impact of Donwood's development.

*Right to Develop as B-3*. Donwood argues that because the property has been rezoned as B-3, any requested use compatible with B-3 must be approved. Donwood asserts that the County cannot impose conditions that are more restrictive than those already inherent in a B-3 designation. This argument ignores the fact that this property is subject to the contractual condition clause of the program to implement. More significantly, Donwood does not show which, if any, of the conditions imposed by the County would be precluded by a B-3 classification. And we can find none. The 1977 rezoning to freeway commercial allowed the development of an automobile and truck repair service station, restaurant, convenience store, motel, and similar facilities. A B-3 zone accommodates the same uses.

Moreover, the site plan submitted by Donwood was insufficient for the County to determine whether the requested development was compatible with a B-3 zone. Donwood's approach seems to be: this is a B-3—"trust us." Many of the County's conditions were prompted by this lack of detail. The County would have been well within its rights to simply deny the application because of this lack of detail. However, rather than do that, the County approved the development subject to the conditions. Donwood's proposed development failed to specify the development intended. Donwood also failed to submit a detailed site plan that would have enabled the County to evaluate the compatibility of the development with any zone classification or consider the environmental impacts of the proposed development.

■ *Denial of Equal Protection.* Donwood also contends that the change of conditions process violated its right to equal protection of laws under the Fourteenth Amendment to the United States Constitution and article I of the Washington Constitution. Again, the argument here is that any conditions above the minimum required by the B-3 zone designation violate due process because other property included in the B-3 designation is not subject to similar restrictions. Again, this argument assumes that the County cannot continue to require compliance with the earlier 1977 conditions. As we have decided, it can. The County may not have had authority to deny a compatible B-3 use. However, it did have the authority to impose conditions on development to mitigate the impact of a compatible B-3 use. This is particularly true when, as here, the impact of this development has been determined by earlier government engineering evaluations and public hearings. Therefore, the effect of the crossover rezone—to retain the conditions imposed under the 1977 proceedings—does not violate Donwood's equal protection right.

*Contractual Conditions.* Donwood contends that the program to implement is inconsistent in its use of the term " 'contractual' conditions" and "conditions." The program to implement uses both terms. Program to Implement § 1 at 3; § 7 at 5; n.3 at 10. Donwood argues that the crossover conditions imposed by the County are not contractual and, therefore, the language of the program to implement does not apply.

The language used by the County is not artful. It is nonetheless sufficiently clear. The County, having gone through the public hearing process to protect adjacent landowners and the general public, wanted to continue those protections during the implementation period of its comprehensive plan. It is clear that the County's program to implement contemplated continuation of the conditions.

*Challenges to Findings of Fact and Conclusions of Law.* As we have noted, the standard of review for factual matters is whether the findings are supported by substan-

tial evidence. RCW 7.16.120(5). Our decision rests on legal conclusions. The County's use of a program to implement to effect its comprehensive zoning plan was appropriate. We have concluded that the County had authority to impose additional conditions on this development. Donwood challenges every statement in the commissioners' decision that is contrary, or might be construed as contrary, to Donwood's position. We have reviewed the record and conclude that the findings are supported by substantial evidence and that the conditions imposed by the County were a reasonable exercise of its governmental authority.

*Attorney Fees.* Given our disposition, Donwood is not the prevailing party and is not entitled to attorney fees.

The judgment of the trial court is affirmed.

KURTZ, A.C.J., and BURCHARD, J. Pro Tem., concur.