148

[Nos. 64751-2-I; 64072-1-I.    Division One.    December 27, 2010.]

DAVIDSON SERLES & ASSOCIATES ET AL., *Petitioners*, v. THE CENTRAL PUGET SOUND GROWTH MANAGEMENT HEARINGS BOARD, *Defendant*, THE CITY OF KIRKLAND ET AL., *Respondents*.

*Jeffrey M. Eustis* (of *Aramburu & Eustis LLP*) for petitioner Davidson Serles & Associates.

*David S. Mann* (of *Gendler & Mann LLP*), for petitioner TR Continental Plaza Corporation.

*Robin Jenkinson, City Attorney*, for respondent City of Kirkland.

*George R. Hill* (of *McCullough Hill PS*), for respondents Touchstone Corporation and Touchstone KPP Development LLC.

¶1 DWYER, C.J. — The Growth Management Hearings Boards (Boards)[1] are creatures of statute without inherent or common-law powers. As such, they may exercise only those powers conferred by statute, either expressly or by necessary implication. The Growth Management Act (GMA), chapter 36.70A RCW, empowers the Boards with the authority to invalidate a jurisdiction's comprehensive plan or development regulations under particular circumstances. The appellants herein contend that a Board is required to invalidate an ordinance whenever that Board finds that the challenged ordinance was adopted in violation of the State Environmental Policy Act (SEPA), chapter 43.21C RCW. We disagree. Because the Boards' power to fashion a remedy is strictly constrained by the GMA and the GMA does not provide that the Boards are required, as a matter of law, to invalidate such ordinances, the appellants' contention fails. Accordingly, we affirm the decision of the Central Puget Sound Growth Management Hearings Board.

I

¶2 Touchstone Corporation and Touchstone KPP Development LLC (collectively Touchstone) own an 11.5 acre site in downtown Kirkland known as Kirkland Parkplace. In April 2007, Touchstone and two other landowners applied

---

[1] Effective July 1, 2010, the legislature amended chapter 36.70A RCW to consolidate the three Growth Management Hearings Boards into one Growth Management Hearing Board. LAWS OF 2010, ch. 211. The record before us was compiled when there were three boards. The present case was before the Central Puget Sound Growth Management Hearings Board.

to the city of Kirkland (City) to amend the City's comprehensive plan and zoning code to allow taller building heights, among other changes. The City then sponsored a proposal to adopt an ordinance establishing the area containing the three properties as a planned action area.

¶3 The City conducted a review of the environmental impacts of the proposed amendments and enactments. In April 2008, the City issued a draft environmental impact statement (EIS) that evaluated only the proposed action and a "no action" scenario; it did not evaluate any alternative actions. In October 2008, the City issued the final EIS. The final EIS contained one additional alternative, which was merely a slightly modified version of the proposed action.

¶4 The City then enacted several ordinances implementing the landowners' and the City's proposals. The City amended its comprehensive plan through Ordinance No. 4170. The City amended its zoning code through Ordinance No. 4171. The City also enacted Ordinance Nos. 4173 and 4174 in order to amend other portions of the comprehensive plan and the zoning code. In addition, the City enacted Ordinance No. 4172, which adopted design review guidelines, and Ordinance No. 4175, which created a planned action area.

¶5 Davidson Serles & Associates and TR Continental Plaza Corp. (collectively Davidson), property owners with land neighboring Touchstone's Kirkland Parkplace property to the southeast, each filed petitions for review with the Central Puget Sound Growth Management Hearings Board, challenging the enactment of the comprehensive plan and zoning code amendments contained within Ordinance Nos. 4170 and 4171. They did not challenge the validity of the other four ordinances before the Board. Their appeals were consolidated. Touchstone was allowed to intervene in the action to defend the validity of the City's ordinances.

¶6 Among other rulings, the Board determined that the final EIS was inadequate for failure to consider alterna-

tives. The Board found that as a result, the City was not in compliance with SEPA and remanded for the City to come into compliance. However, the Board determined that none of the goals of the GMA would be undermined were the ordinances to remain in effect. As a result of this determination, the Board did not invalidate the ordinances.

¶7 Davidson appealed the Board's decision to the superior court. Davidson then timely sought direct appellate review pursuant to the Administrative Procedure Act[2] (APA), RCW 34.05.518(3) and (6), by filing an application requesting that the Board issue a certificate of appealability.[3] The Board determined that delay in Davidson's appeal would be detrimental to Davidson and that direct review by the Court of Appeals would likely have significant precedential value. Thus, the Board issued a certificate of appealability. Davidson then timely filed a motion for discretionary review with this court. A commissioner of our court granted discretionary review.

---

[2] Ch. 34.05 RCW.

[3] A Board may, pursuant to RCW 34.05.518, issue a certificate of appealability that allows a final decision of a Board to be directly reviewed by the Court of Appeals where the court grants direct review. RCW 34.05.518(1). RCW 34.05.518 describes the circumstances under which a Board may issue a certificate of appealability:

[(3)](b) An environmental board may issue a certificate of appealability if it finds that delay in obtaining a final and prompt determination of the issues would be detrimental to any party or the public interest and either:
(i) Fundamental and urgent statewide or regional issues are raised; or
(ii) The proceeding is likely to have significant precedential value.
(4) The environmental board shall state in the certificate of appealability which criteria it applied, explain how that criteria was met, and file with the certificate a copy of the final decision.

In order for an appellant to seek direct review by the Court of Appeals of the final decision of a Board, the appellant must first timely file a petition for review with the superior court and then must timely file an application for direct review with the superior court. RCW 34.05.518(6)(a). The application must request that the Board file a certificate of appealability. RCW 34.05.518(6)(a). Where the Board issues a certificate of appealability, the appellant must then file a notice for discretionary review in the superior court. RCW 34.05.518(6)(d). In deciding whether to accept direct review, the appellate court shall consider the same criteria that the Board must consider. RCW 34.05.518(5).

## II

■■ ¶8 We review a decision of the Board pursuant to the APA.[4] *Thurston County v. Cooper Point Ass'n*, 148 Wn.2d 1, 7, 57 P.3d 1156 (2002). The APA requires that we base our review upon the record made before the Board. *City of Redmond v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 136 Wn.2d 38, 45, 959 P.2d 1091 (1998). We review the Board's legal conclusions de novo, giving substantial weight to the Board's interpretation of the statute it administers. *City of Redmond*, 136 Wn.2d at 46; *King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 142 Wn.2d 543, 555, 14 P.3d 133 (2000). The burden of demonstrating the invalidity of the Board's action is on the party asserting invalidity. RCW 34.05.570(1)(a). Thus, Davidson has the burden of demonstrating the invalidity of the Board's decision not to invalidate the City's ordinances. RCW 34.05.570(3) sets forth nine bases for granting relief from the Board's decision, including the only one asserted by Davidson: that "[t]he agency has erroneously interpreted or applied the law."[5] RCW 34.05.570(3)(d).

---

[4] The City and Touchstone contend, in their response brief, that Davidson's appeal should be dismissed because Davidson failed to demonstrate that it was "substantially prejudiced" by the Board's determination that the City's ordinances should not be invalidated. *See* RCW 34.05.570(1)(d) ("The court shall grant relief only if it determines that a person seeking judicial relief has been substantially prejudiced by the action complained of."). Given our resolution of the issues in this case, Davidson is not entitled to relief regardless of whether substantial prejudice was shown. Thus, we decline to reach this issue.

[5] With respect to judicial review of administrative orders in adjudicative proceedings, the APA provides:

(3) Review of agency orders in adjudicative proceedings. The court shall grant relief from an agency order in an adjudicative proceeding only if it determines that:
(a) The order, or the statute or rule on which the order is based, is in violation of constitutional provisions on its face or as applied;
(b) The order is outside the statutory authority or jurisdiction of the agency conferred by any provision of law;
(c) The agency has engaged in unlawful procedure or decision-making process, or has failed to follow a prescribed procedure;
(d) The agency has erroneously interpreted or applied the law;

## III

¶9  Davidson contends that the Board was required, as a matter of law, to invalidate the two challenged ordinances— Ordinance Nos. 4170 and 4171—because the EIS supporting those ordinances was found to be inadequate. We disagree.

¶10  An analysis of the Board's authority "to impose or fashion a remedy in any given case begins with the principle that administrative agencies are creatures of the Legislature, without inherent or common-law powers and, as such, may exercise only those powers conferred by statute, either expressly or by necessary implication." *Skagit Surveyors & Eng'rs, LLC v. Friends of Skagit County*, 135 Wn.2d 542, 558, 958 P.2d 962 (1998) (citing *Kaiser Aluminum & Chem. Corp. v. Dep't of Labor & Indus.*, 121 Wn.2d 776, 780, 854 P.2d 611 (1993); *Human Rights Comm'n v. Cheney Sch. Dist. No. 30*, 97 Wn.2d 118, 125, 641 P.2d 163 (1982)). "The power of an administrative tribunal to fashion a remedy is strictly limited by statute." *Skagit Surveyors*, 135 Wn.2d at 558. Accordingly, we must look to the GMA itself to determine the authority of the Board.

¶11  The Board has jurisdiction to hear and determine SEPA claims related to the adoption or amendment of a comprehensive plan or development regulation.

---

(e) The order is not supported by evidence that is substantial when viewed in light of the whole record before the court, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this chapter;

(f) The agency has not decided all issues requiring resolution by the agency;

(g) A motion for disqualification under RCW 34.05.425 or 34.12.050 was made and was improperly denied or, if no motion was made, facts are shown to support the grant of such a motion that were not known and were not reasonably discoverable by the challenging party at the appropriate time for making such a motion;

(h) The order is inconsistent with a rule of the agency unless the agency explains the inconsistency by stating facts and reasons to demonstrate a rational basis for inconsistency; or

(i) The order is arbitrary or capricious.

RCW 34.05.570.

The growth management hearings board shall hear and determine only those petitions alleging either:

(a) That, except as provided otherwise by this subsection, a state agency, county, or city planning under this chapter *is not in compliance with the requirements of* this chapter, chapter 90.58 RCW as it relates to the adoption of shoreline master programs or amendments thereto, or *chapter 43.21C RCW* as it relates to plans, development regulations, or amendments, adopted under RCW 36.70A.040 or chapter 90.58 RCW.

RCW 36.70A.280(1) (emphasis added). RCW 36.70A.300(1) indicates that the Board shall issue a final order "based exclusively on whether or not [a jurisdiction] is in compliance with the requirements of this chapter . . . or chapter 43.21C RCW." In its final order, the Board may find compliance "with the requirements of [the GMA] or chapter 43.21C RCW" or may find that the jurisdiction is not in compliance "with the requirements of [the GMA] or chapter 43.21C RCW" and remand the matter to the jurisdiction. RCW 36.70A.300(3). Thus, the legislature has empowered the Board to find noncompliance with SEPA and remand to allow the jurisdiction to come into compliance.

¶12 Even upon a Board's finding of noncompliance and order of remand, comprehensive plans and development regulations remain valid "[u]nless a board makes a determination of invalidity as provided in RCW 36.70A.302." RCW 36.70A.300(4).[6] A Board's authority to make a determination of invalidity is limited by the statute, which provides:

The board may determine that part or all of a comprehensive plan or development regulations are invalid if the board:

(a) Makes a finding of noncompliance and issues an order of remand under RCW 36.70A.300;

(b) Includes in the final order a determination, supported by findings of fact and conclusions of law, that the continued

---

[6] RCW 360.70A.300(4) provides, "Unless the board makes a determination of invalidity as provided in RCW 36.70A.302, a finding of noncompliance and an order of remand shall not affect the validity of comprehensive plans and development regulations during the period of remand."

validity of part or parts of the plan or regulation would substantially interfere with the fulfillment of the goals of this chapter; and

(c) Specifies in the final order the particular part or parts of the plan or regulation that are determined to be invalid, and the reasons for their invalidity.

RCW 36.70A.302(1).[7] In sum, the Board is empowered with the authority to invalidate a jurisdiction's comprehensive plan or development regulations where the Board (1) makes a finding of noncompliance, (2) remands, (3) makes a determination supported by findings and conclusions that the continued validity of the plan or regulation will *substantially interfere with the fulfillment of the goals of the GMA*, and (4) specifies the portion of the action that is invalid and explains why. RCW 36.70A.302(1).

¶13 However, contrary to Davidson's assertions, the legislature did not grant the Board the authority to invalidate comprehensive plans or development regulations simply because those enactments were based on an inadequate

---

[7] The provisions relating to invalidity were first added to the GMA in 1995 on the recommendation of the Governor's Task Force on Regulatory Reform (Task Force). *Skagit Surveyors*, 135 Wn.2d at 561. The Task Force recommended that " 'a comprehensive plan or development regulation which is found to be invalid should remain in effect, unless the Growth Management Hearings Board determines that continued enforcement of the plan would violate the policy of the [Growth Management Act].' " *Skagit Surveyors*, 135 Wn.2d at 561 (alteration in original) (quoting Governor's Task Force on Regulatory Reform, Final Report 52 (1994)). The Task Force's report further explained:

"Under the [Growth Management Act], a local government's development regulations must be consistent with its comprehensive plan. If a comprehensive plan is declared invalid, or if a development regulation is found to be inconsistent with the plan, the validity of any permits issued by the local government under the authority of those development regulations will be called into question.

"Because there are many different circumstances in which this issue may arise, it is not possible to develop a single principle which would apply in all cases. Therefore, the Task Force is recommending giving the Growth Management Hearings Boards discretion to make the determination on a case-by-case basis. The presumption should be that the plan or regulation will remain in effect unless the Board determines this would violate the policy of the [Growth Management Act]."

*Skagit Surveyors*, 135 Wn.2d at 561-62 (alterations in original) (quoting Governor's Task Force, *supra*, at 52).

EIS. Rather, the Board is restricted by the plain terms of the GMA.

¶14 To find invalidity in this instance, the Board would have needed to determine that the continued validity of the SEPA-noncompliant ordinances would "substantially interfere with the fulfillment of the goals" of the GMA.[8] RCW 36.70A.302(1)(b). One of the GMA goals that was considered by the Board herein was goal 10, which states, "Protect the environment and enhance the state's high quality of life, including air and water quality, and the availability of water." RCW 36.70A.020(10). On the appropriate facts, the Board could find that failure to properly conduct the required environmental review for a city or county action interfered with fulfillment of the GMA's environmental goal and, upon such a finding, could invalidate the relevant ordinance. This case does not, however, present such appropriate facts. As the Board herein stated:

> A determination of invalidity is based on a finding that continued validity of a City's action "would substantially interfere with the fulfillment" of a GMA Goal. Petitioners here cite to GMA Goals 1 (Urban growth) and 12 (Public facilities and services). The Board has previously concluded that Petitioners have not carried their burden in demonstrating that the challenged Ordinance will frustrate GMA goals to accommodate urban growth and prevent sprawl. See Legal Issue 3. The Board has also concluded that the Ordinances do not violate the concurrency required by Goal 12. See Legal Issues 1 and 2.

---

[8] Interestingly, the Board herein, in its order on motions, explained that no Board has invalidated an ordinance based solely on SEPA noncompliance:

Apparently none of the Growth Management Boards has ever invalidated an ordinance based *solely* upon a finding of noncompliance with SEPA. Sometimes a SEPA-noncompliant ordinance is invalidated for noncompliance with other requirements of the GMA. See, e.g., *Cascade Bicycle Club v. City of Lake Forest Park*, CPSGMHB Case No. 07-3-0010c, Final Decision and Order (July 23, 2007); *MBA/Camwest v. City of Sammamish*, CPSGMHB Case No. 05-3-0027, Final Decision and Order (August 4, 2005). However, the language of .300 or .302 does not limit invalidity to a finding of noncompliance with 36.70A – it just refers to a finding of noncompliance. If the Board finds a plan or development regulation is noncompliant, there are steps the Board must take to enter a finding of invalidity.

*Davidson Serles v. City of Kirkland*, No. 09-3-0007c, at 8-9 (Cent. Puget Sound Growth Mgmt. Hr'gs Bd. June 11, 2009) (Order on Motions).

The Board also looks to Goal 10 which requires environmental protection. In this decision, the Board has found Kirkland's SEPA review inadequate in one respect and has therefore remanded the Ordinance to the City for further review. While the deficiency is serious, the Board is not persuaded that the GMA goal will be thwarted absent a ruling of invalidity. The Board remands the Ordinances to the City, establishes a compliance schedule, and declines to enter an order of invalidity.

*Davidson Serles v. City of Kirkland*, No. 09-3-0007c, at 20 (Cent. Puget Sound Growth Mgmt. Hr'gs Bd. Oct. 5, 2009) (Final Decision and Order).

¶15 Notwithstanding the Board's limited statutory authority, Davidson contends that the Board was required to render the ordinances invalid in order to fulfill its duties under SEPA. Quasi-judicial bodies such as the Boards are categorically exempt from SEPA's threshold determination and EIS requirements. WAC 197-11-800(11). Davidson contends, however, that the Boards are still bound by SEPA's other requirements—namely, SEPA's pronouncements that state agencies shall interpret and administer the laws of the State of Washington in accordance with SEPA's policies, RCW 43.21C.030(1), and shall

use all practicable means, consistent with other essential considerations of state policy, to improve and coordinate plans, functions, programs, and resources to the end that the state and its citizens may:

(a) Fulfill the responsibilities of each generation as trustee of the environment for succeeding generations;

(b) Assure for all people of Washington safe, healthful, productive, and aesthetically and culturally pleasing surroundings;

(c) Attain the widest range of beneficial uses of the environment without degradation, risk to health or safety, or other undesirable and unintended consequences;

(d) Preserve important historic, cultural, and natural aspects of our national heritage;

(e) Maintain, wherever possible, an environment which supports diversity and variety of individual choice;

(f) Achieve a balance between population and resource use which will permit high standards of living and a wide sharing of life's amenities; and

(g) Enhance the quality of renewable resources and approach the maximum attainable recycling of depletable resources.

RCW 43.21C.020(2).

■ ■ ¶16 SEPA overlays and supplements all other state laws. *Donwood, Inc. v. Spokane County*, 90 Wn. App. 389, 398, 957 P.2d 775 (1998); *see also Dep't of Natural Res. v. Thurston County*, 92 Wn.2d 656, 664, 601 P.2d 494 (1979) ("SEPA is an overlay of law which supplements existing statutory authority."). Thus, the Boards are constrained by SEPA's policies. However, the Board's decision herein to remand to the City to comply with SEPA is consistent with the policies of SEPA. The Boards are not required, as a matter of law, to *always* invalidate an ordinance that was enacted based on a noncompliant EIS in order for the Boards to abide by SEPA's policies. In fact, such a rule conflicts with the Boards' statutory authority to invalidate actions, which is not mandatory and certainly is not absolute. Therefore, the Board herein did not violate SEPA by determining that invalidation of the ordinances was not appropriate and by remanding to the City.[9]

■ ¶17 Davidson also contends that the Board was required to invalidate the ordinances upon its findings of noncompliance with SEPA because several judicial decisions set aside actions that were made in violation of SEPA's requirements. Appellants' Br. at 25-27 (citing *Weyerhaeuser v. Pierce County*, 124 Wn.2d 26, 47, 873 P.2d 498 (1994); *Noel*

---

[9] The City and Touchstone contend that "the unchallenged factual component of the Board's finding that continued validity of the City Ordinances during the compliance period will not substantially interfere with the GMA goal to protect the environment *is a verity on appeal.*" Resp'ts' Br. at 16 (emphasis added). This assertion is without merit. However, Davidson does not argue on appeal that the evidence in the record revealed that the continued validity of the ordinances would interfere with goal 10 of the GMA. Rather, Davidson makes only its legal argument that as a matter of law, SEPA's policies required the Board to invalidate the ordinances. Accordingly, the Board's factual determinations underlying its ruling that the continued validity of the ordinances would not substantially interfere with the fulfillment of the goals of the GMA are uncontested.

*v. Cole*, 98 Wn.2d 375, 655 P.2d 245 (1982); *Barrie v. Kitsap County*, 93 Wn.2d 843, 861, 613 P.2d 1148 (1980); *Lassila v. City of Wenatchee*, 89 Wn.2d 804, 816-17, 576 P.2d 54 (1978); *Eastlake Cmty. Council v. Roanoke Assocs.*, 82 Wn.2d 475, 487, 513 P.2d 36 (1973)). As discussed above, the Boards are creatures of the legislature, without inherent or common law powers. *Skagit Surveyors*, 135 Wn.2d at 558. As such, the Boards may exercise only those powers conferred upon them by statute, and their power to fashion a remedy is strictly limited by the GMA. *Skagit Surveyors*, 135 Wn.2d at 558. The remedy that the judiciary has fashioned when presented with a violation of SEPA's requirement cannot alter the Boards' statutory authority. The Boards take their power from and are constrained by applicable statutes as enacted by the legislature.

¶18 Affirmed.[10]

GROSSE and APPELWICK, JJ., concur.

---

[10] The City and Touchstone moved to dismiss this appeal on mootness grounds because the City has completed a supplemental EIS (SEIS) since the remand from the Board and the City has adopted new ordinances based on the SEIS. The new ordinance, Ordinance No. 4257, merely states that it "reaffirms [City Council] adoption of Ordinance No. 4170 and Ordinance No. 4171." The new ordinance does not purport to supersede, supplant, amend, modify, or reenact the initial ordinances.

"A case is moot if a court can no longer provide effective relief." *Orwick v. City of Seattle*, 103 Wn.2d 249, 253, 692 P.2d 793 (1984).

"The general rule is that void ordinances cannot be amended and that an ordinance passed as an amendment to a previous ordinance, which never took effect, is invalid; a void ordinance cannot be vitalized by amendment, and re-enactment is necessary to validate that intended to be enacted by it. . . . Without question, where an ordinance is void, a subsequent ordinance, that cannot be enforced of itself, and that purports to amend a single section of the prior ordinance, is invalid."

*State ex rel. Weiks v. Town of Tumwater*, 66 Wn.2d 33, 36-37, 400 P.2d 789 (1965) (emphasis omitted) (quoting 6 EUGENE McQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 21.05, at 183 (3d ed. 1949)).

Were we to grant Davidson's requested relief, the initial ordinances would be invalid. Because the City's new ordinance merely reaffirms the initial ordinances, the new ordinance would also be invalid. *See Weiks*, 66 Wn.2d at 36-37. Thus, this appeal is not moot.

The City and Touchstone also moved for us to take judicial notice of the City's draft SEIS, which was issued in order to comply with the Board's order on remand.

It is unnecessary for us to take judicial notice of the SEIS in order to resolve the issues presented in this appeal. Accordingly, we deny the motion.